459 So.2d 216 (1984)
STATE of Louisiana, Plaintiff-Appellee,
v.
William HAMILTON, Defendant-Appellant.
No. CR84-56.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1984.
Rehearing Denied December 12, 1984.
*217 Linda Veazey, Abbeville, for Defendant-appellant.
Calvin Woodruff, Asst. Dist. Atty., Abbeville, for Plaintiff-appellee.
Before FORET, DOUCET and KNOLL, JJ.
KNOLL, Judge.
The defendant, William Hamilton, was indicted for manslaughter, a violation of LSA-R.S. 14:31. Defendant pleaded not guilty and on June 15, 1983, a twelve-member jury found him guilty as charged. After receiving the pre-sentence investigation, the trial court sentenced defendant to serve five years at hard labor.
Defendant appeals relying on four assignments of error for a reversal of his conviction and sentence, alleging that the trial court erred:

*218 1. In failing to instruct the jury that simple battery is a responsive verdict to the charge of manslaughter;
2. In failing to instruct the jury that if it found beyond a reasonable doubt that defendant committed a battery on the victim but it did not find beyond a reasonable doubt that the battery resulted in the death of the victim, it must find the defendant not guilty;
3. In not ruling that the legislature's failure to specify in LSA-C.Cr.P. Art. 814 that simple battery can be a responsive verdict to manslaughter constitutionally deprived defendant of due process of law and of a fair and impartial trial; and
4. In that the evidence was insufficient to support a finding beyond a reasonable doubt that defendant's act caused the victim's death.
For the following reasons, we affirm defendant's conviction.

FACTS
At approximately 2:30 a.m. on May 16, 1982, defendant rang the doorbell at his first cousin's home at 310 Valcourt Street in Abbeville. His cousin, Kenneth Devoltz, was away for the weekend. Only Kenneth's wife, Delores Devoltz, their daughters Carrie, Charlotte, and Celissa, and Charlotte's roommate, Mayola Landry, were in the house. When they let defendant into the house, he appeared intoxicated and stated, "Call an ambulance, I just beat a nigger to death." At first Mrs. Devoltz and her daughters did not believe him because he tended to exaggerate when intoxicated. Defendant returned outside and Mrs. Devoltz and her daughters observed the body of the victim, Dalton Stewart, lying on the opposite side of the street, underneath a tree. Defendant kicked the victim's body and said "Come on. You're not hurt. Get up." When Mrs. Devoltz and her daughters asked defendant why he beat the victim, he first responded that he knew Kenneth Devoltz was not at home, that the women were alone, and that he thought the victim would try to break into the house; later defendant, a white man, stated he beat the victim "because he was a nigger."
Mrs. Devoltz immediately called the Abbeville City Police and within a short period of time Officers Stephen Menard and John Thibodeaux arrived at the scene. They observed a white car parked on the road; to the left of the car, the body of a black male was on the side of the road with his head up against a tree; and defendant standing approximately four feet from the victim. Defendant appeared intoxicated. The victim was partially conscious, smelled strongly of alcohol and, although he was unable to speak, he was groaning in pain.
Officers from the Vermilion Parish Sheriff's Office met the Abbeville officers at the scene and conducted a joint investigation. When the officers asked defendant what happened, he stated that he beat the victim because he thought the man was trying to break into houses in the neighborhood. We have reviewed the record carefully and it is void of any evidence that the victim was on the premises or in the proximity of the Devoltz home. The officers did not see any cuts, bruises or blood on either the victim or defendant. They did, however, find two knives in the victim's possession, one in his boot and another in his back pocket.
An ambulance took the victim to the Abbeville General Hospital emergency room where he was treated by Dr. Allen P. Kennedy. Dr. Kennedy observed: massive swelling of the victim's face, mainly on the right side; he was semi-comatose; he appeared to have suffered a massive soft tissue trauma to the right side of his face, upper lip and right eye; blood was oozing from the victim's nose and mouth; and, the victim appeared acutely intoxicated. Blood tests determined the victim's blood alcohol level was in the range of .30.
Despite the initial stability of the vital signs of the victim, he suffered cardiopulmonary arrest at approximately 6:25 a.m. The medical staff resuscitated the victim and placed him on life-support systems. *219 Subsequent EEGs and a brain scan conducted during the next four days revealed that brain necrosis was present (brain death). The victim was removed from the life-support systems and was pronounced dead on May 20, 1982.

ASSIGNMENTS OF ERROR ONE AND TWO
Defendant contends that the trial court erred in failing to instruct the jury concerning two special charges.
Defendant argues that the trial court should have instructed the jury that simple battery is a responsive verdict to manslaughter. We disagree.
Responsive verdicts are provided in LSA-C.Cr.P. Art. 814. In pertinent part, Art. 814 provides as follows:
"A. The only responsive verdicts which may be rendered when the indictment charges the following offenses are
* * * * * *
 5. Manslaughter:
 Guilty.
 Not guilty."
From a reading of Art. 814 it is clear that simple battery is not a responsive verdict to the charge of manslaughter.
Furthermore, although defendant contends the trial court failed to instruct the jury that simple battery is a responsive verdict to manslaughter, he did not include such a special charge in writing, nor did he serve the State with a copy of such a proposed instruction. We have consistently held that LSA-C.Cr.P. Art. 807 requires the defendant to reduce his requested special charges to writing. State v. Weems, 358 So.2d 285 (La.1978); State v. Orsby, 261 La. 605, 260 So.2d 639 (1972). Therefore, the trial court properly denied defendant's oral motion for a special jury charge.
Defendant also argues that the trial court failed to instruct the jury that if it found that defendant committed a battery on the victim beyond a reasonable doubt, but did not find that the battery resulted in the victim's death, it must find the defendant not guilty.
Again, defendant did not reduce this request for special charge to writing as mandated by C.Cr.P. Art. 807. State v. Weems, supra; State v. Orsby, supra. Yet further, the record does not reflect that defendant even made an oral motion for this special charge. An irregularity or error is waived unless it was objected to at the time of the occurrence. LSA-C.Cr.P. Art. 841. Our consideration is limited to those points objected to in the trial court. State v. Roach, 322 So.2d 222 (La.1975).
These two assignments of error lack merit.

ASSIGNMENT OF ERROR THREE
Defendant contends that he was deprived of due process of law since LSA-C.Cr.P. Art. 814 does not provide that simple battery is a responsive verdict to manslaughter.
Louisiana courts have consistently upheld the constitutionality of LSA-C.Cr.P. Art. 814. State v. Qualls, 353 So.2d 978 (La.1977); State v. Cook, 345 So.2d 29 (La. 1977); State v. Smith, 322 So.2d 197 (La. 1975); State v. Hill, 297 So.2d 660 (La. 1974); State v. Peterson, 290 So.2d 307 (La.1974).
In State ex rel. Elaire v. Blackburn, 424 So.2d 246 (La.1982), the Supreme Court stated that when the accused requests and is refused an instruction on a lesser and included offense, or when the accused timely objects to the trial court's failure to give a responsive offense instruction to which he is statutorily entitled, the conviction may be reversed. In the instant case the requested special charges were not reduced to writing and were made spontaneously by oral motion in objecting to the trial court's jury charges.
As discussed earlier, defendant was not statutorily entitled to a responsive verdict of simple battery under C.Cr.P. Art. 814. The only possible verdicts provided by law to manslaughter are guilty and not guilty. Therefore, that aspect of the Elaire rationale is inapplicable to the case sub judice.
*220 Likewise, in order for the Elaire decision to be applicable, simple battery would have to constitute a "lesser and included offense" of manslaughter. Lesser and included grades of the charged offense are those in which all of the essential elements of the lesser offense are also essential elements of the greater offense charged. State ex rel. Elaire v. Blackburn, supra; State v. Cooley, 260 La. 768, 257 So.2d 400 (1972). Simple battery has an element of lack of consent which is not an element of manslaughter. See LSA-R.S. 14:31, 14:33 and 14:35. Therefore, we conclude that simple battery is not a responsive verdict under the rationale of State ex rel. Elaire v. Blackburn.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR FOUR
Defendant contends that there was insufficient evidence to support a finding beyond a reasonable doubt that defendant's actions caused the death of the victim. Defendant argues that several other factors such as alcohol intoxication, aspiration, or a blow to the victim's head precipitated by a fall, could have caused the victim's death.
The standard of review of sufficiency of the evidence is whether a rational trier of fact, accepting the facts in a light most favorable to the prosecution, could have found defendant guilty of the crime charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Chism, 436 So.2d 464 (La.1983).
Several witnesses testified that defendant appeared in the early morning hours of May 16, 1982, at the Devoltz home and declared that he had just beat the victim to death. Later the witnesses saw defendant kick the victim's body with his foot, telling the victim to get up because he was not hurt.
All of the medical expert opinions found that the primary cause of the victim's death was due to a large blood clot on the brain's surface, caused by a traumatic head injury consistent with a beating. Dr. Allen Kennedy, the emergency room physician, found the right side of the victim's face bloody and massively swollen. Dr. Harold Trahan, Jr., the cardiologist who treated the victim after he suffered cardiopulmonary arrest at 6:25 a.m. on May 16, 1982, said that the cause of the initial cardiopulmonary arrest was a traumatic injury to the brain. Dr. L.E. Buettner, the physician who performed the victim's autopsy, concluded that the blood clot on the victim's brain caused pressure to the brain stem and cessation of cardiopulmonary function was the result of trauma to the victim's head. Dr. Ardley Hebert, the Vermilion Parish coroner, concluded that the victim's cause of death was pressure on the brain from a large blood clot on the brain surface.
The medical testimony preponderates that the swelling of the victim's brain was not caused by acute alcoholic intoxication. Dr. Kennedy based his determination on two reasons: (1) when he first examined the victim in the emergency room his vital signs were stable; and (2) because of the victim's known history of alcoholism, lethal alcohol intoxication usually occurs at a level of .50. Dr. Beuttner cautioned that the effect of intoxication is relative among different persons; some can function at levels approaching .40. Dr. Hebert testified that the victim was a known town drunk, and chronic alcoholics are able to tolerate higher levels of alcoholic intoxication. In conclusion, although each of these medical experts found that the victim's intoxication contributed to an uncertain degree to the pressure on the brain stem, they agreed that the primary factor in the victim's death was a traumatic head injury.
The defendant argues that aspiration can cause cardiopulmonary arrest and is a common cause of death among alcoholics. Dr. Beuttner, the treating cardiologist opined that, from his examination, although aspiration did occur, it occurred after the initial cardiopulmonary arrest at 6:25 a.m. in the hospital.
Defendant's last contention is that the victim's blood clot on the surface of the *221 brain was the result of a fall. Even though the medical experts were unable to pinpoint the exact cause of the victim's head trauma, they agreed that the victim's head injuries were more consistent with a beating rather than a fall.
In summary, all of the medical experts concluded that the victim's weakened physical condition lessened his resistance to trauma and although all the above-mentioned factors contributed to the victim's death, the blood clot on the surface of the brain, consistent with a beating, was the primary factor which caused the cardiopulmonary arrest.
In State v. Durio, 371 So.2d 1158 (La. 1979), the Supreme Court stated:
"Defendants contend that the trial court erred in denying their motion for a new trial. They argue that because the medical testimony introduced at trial indicated that Mrs. Davidson died of bronchial pneumonia and not from head injuries sustained as the result of a beating, the verdict finding them guilty of second degree murder is contrary to the law and the evidence.
In State v. Wilson, 114 La. 398, 38 So. 397 (1905) a similar argument was raised. In that case defendant was found guilty of murder when the victim he shot subsequently died from pneumonia. Based on medical testimony which indicated that the victim would not have contracted pneumonia but for the gunshot wound, this Court held that causation had been established. The court found that if the defendant `hastened the termination of life, or contributed, mediately or immediately, to the death, in a degree sufficient to be a clearly contributing cause, that is sufficient.' A similar standard for determining causation in fact is approved by LaFave and Scott in their treatise on criminal law. The test adopted there is `Was the defendant's conduct a substantial factor in bringing about the forbidden result.' LaFave and Scott, Criminal Law, § 35, p. 250 ff. See also Focht, Proximate Cause in the Law of Homicide, 12 Cal.L.Rev. 19, 27 (1938).
It is clear from the testimony produced by the state that the legal cause of the victim's death was the injuries inflicted on the victim at the time of the beating. All three medical experts testified that Mrs. Davidson died of bronchial pneumonia but stated that the probable cause of the pneumonia was the depressed state of her defense systems due to the head injuries and the operation necessitated by them. In his testimony Dr. McCormick explained that the contraction of pneumonia is a common result of a patient's position and comatose state following traumatic injury."
Viewing the evidence in a light most favorable to the prosecution and excluding every reasonable hypothesis of innocence, we find that the defendant's acts "hastened the termination of the [victim's] life, or contributed, mediately or immediately, to the death [of the victim], in a degree sufficient to be a clearly contributing cause."
This assignment of error lacks merit.

DECREE
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.