475 So.2d 76 (1985)
STATE of Louisiana, Appellee,
v.
Anita MOSELY, Appellant.
No. 17098-KA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1985.
Rehearing Denied September 20, 1985.
*77 Nesib Nader, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Paul A. Carmouche, Dist. Atty., John A. Broadwell, Asst. Dist. Atty., Shreveport, for appellee.
Before MARVIN, SEXTON and NORRIS, JJ.
MARVIN, Judge.
Anita Mosely appeals her conviction by jury of the second degree murder of the 18-month-old child of her boyfriend, questioning, in two assignments, whether the evidence is legally sufficient to convict. LRS 14:30.1, 15:438.
We find no error and affirm.

FACTS
The child resided with his father, Eric Artison, and his paternal grandmother in Shreveport. During the day of June 6, 1984, the child was observed by his sometime babysitter, his father, his father's male friend, and others to have been alert, playful, normal, in good spirits, and responsive to attention. About 4:45 p.m. on that day, Eric Artison left the child with his girlfriend, Anita, while he and his male friend drove to pick up the maternal grandmother at the completion of her day's work.
Returning home about 30 minutes later, Eric Artison and his passengers found his son, still in defendant's presence, to be in a much different and very abnormal condition. The child's eyes were "rolling" in his head, his lips were pale and becoming paler, his hands were clammy, he could not walk, was disoriented, and did not recognize his father or grandmother. They rushed the child to a nearby pediatric medical clinic where he was seen by Dr. Strain. Dr. Strain testified that he noted that the child had an altered mental status, was disoriented, did not recognize people around him, his eyes "were wandering *78 back and forth," and "that the child did not respond to stimuli around him in appropriate fashion." Dr. Strain instructed the father to immediately take the child to the LSU Medical Center emergency room. Dr. Strain telephoned to alert the medical center.
The child was seen and treated there by Dr. Charlotte Cedotal. Dr. Cedotal noted the child was comatose, barely breathing, and had a heart rate of only 20-30 beats per minute. Dr. Cedotal and other physicians and nurses attempted to resuscitate the child by external cardiac massage. Dr. Cedotal testified that the child's condition was such that she could not administer an intravenous injection, that the surgery unit was alerted and the child was given "adrenalin, sodium bicarb, the usual drugs that you give to a child or to an adult in cardio/respiratory arrest." Dr. Cedotal said the child failed to respond to the resuscitative efforts and expired.
Dr. George McCormick, parish coroner and forensic expert, performed the autopsy on the child. He found the child had a dislocated femur at the knee, several abrasions and contusions on both sides of the neck, which he concluded were caused by fingernails. Dr. McCormick noted that the most significant external and internal injuries were inflicted on the child's back. He found two areas of hemorrhage on the right lung and a large hemorrhage at the site of the large strap muscle, which itself was dislocated. Bruises were found around the head of the child's pancreas and around the left adrenal gland and hemorrhage into the right adrenal gland. Dr. McCormick noted the significant finding that the child's liver was torn down the middle, approximately two inches, at the site where it is attached to the posterior body wall. He concluded that as a result of these injuries, including the liver injury, the child had gone into heart failure. Dr. McCormick stated that the injuries causing the death were multiple blows by a broad, flat object that did not have rounded or sharp corners which could tear the skin, most probably a fist. The abrasions and contusions around the neck were attributed to fingernails because of their size and shape. Dr. McCormick stated that the femur dislocation required the intentional application of considerable force of a pulling or twisting nature.
After her arrest, the defendant made two statements to Shreveport Police. The admissibility of the recorded statements is not an assignment of error. The first statement was exculpatory and admitted nothing. Defendant's second statement was highly inculpatory and she admitted choking and hitting the child with her fist because he was crying. She explained she didn't know why she did it.

ASSIGNMENT NO. 1
The defendant maintains as her first assignment of error that the jury erred in failing to consider whether or not "adequate" medical treatment was administered to the victim at the Strain Clinic or at LSUMC. Defendant's apparent contention is that if either or both the Strain Clinic and LSUMC had provided adequate care, the child would have survived the injuries. The defendant's argument is untenable for two reasons. The medical testimony and the testimony concerning the facts surrounding treatment of the victim demonstrate that the medical care was "adequate". Dr. Strain opined that the child could not have been saved without knowing the cause of his altered mental status. Only defendant knew why and how the injuries were inflicted and she offered no explanation to anyone before the child's death.
Defendant asserts that an IV should have been administered to the child at the Strain Clinic. Dr. Cedotal said that since the child had a ruptured liver, an IV would not have made any difference in saving the child's life. Dr. McCormick testified that the doctors at LSUMC took the appropriate action by attempting the IV and considering surgery for the child. He concluded that the child was in severe shock upon arrival at LSUMC and was "well along the way to death at that time from his internal *79 hemorrhage." Thus, the expert and factual testimony demonstrate that the child was given "adequate" medical assistance and that his death could not have been prevented.
The second reason why the defendant's assignment is untenable is based on case law. A conviction will be upheld in some circumstances even if the medical assistance later rendered to a victim is determined to have been in adequate. In a prosecution for murder, the criminal agency of the defendant as the cause of the victim's death must be established beyond a reasonable doubt. The Louisiana Supreme Court has held on several occasions that it is not essential that the act of the defendant should have been the sole cause of the death. If the conduct of defendant hastened the termination of life, or contributed, mediately or immediately to the death, in a degree sufficient to be a clearly contributing cause, that is sufficient cause in fact. State v. Matthews, 450 So.2d 644 (La.1984); State v. Wilson, 114 La. 398, 38 So. 397 (1905); State v. Scott, 12 La.Ann. 274 (1857). The Louisiana Supreme Court has adopted, in State v. Durio, 371 So.2d 1158 (La.1979), the standard for determining causation in fact that is approved by the LaFave and Scott treatise on criminal law. The standard is whether or not "the defendant's conduct is a substantial factor in bringing about the forbidden result." W. LaFave and A. Scott, Handbook on Criminal Law, § 35 at 250 (1972).
In Durio, supra, a conviction for second degree murder was affirmed where the victim died of pneumonia after suffering head injuries inflicted by defendant. It is equally clear that the legal cause of death in this instance was the beating inflicted upon the 18-month-old victim by defendant. The immediate cause of death, according to Dr. McCormick, was the internal injuries caused by the beating. Defendant's first assignment is found meritless.

ASSIGNMENT NO. 2
Defendant asserts that the State did not meet its burden of proof of showing specific intent to kill or to inflict great bodily harm. LRS 14:30.1; 15:438, 15:271.
When a conviction is based in part on circumstantial evidence we evaluate the evidence in the light most favorable to the prosecution and determine whether the alternative hypothesis of innocence, suggested by defendant, is sufficiently reasonable that a rational juror could not "have found proof of guilt beyond a reasonable doubt" under the Jackson v. Virginia standard. State v. Captville, 448 So.2d 676 (La.1984); State v. Graham, 422 So.2d 123 (La.1982).
Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desires the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Although specific intent is a question of fact, it need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Beck, 445 So.2d 470 (La.App.2d Cir.1984), writ denied. Specific intent is an ultimate legal conclusion to be resolved by the factfinder. State v. LeCompte, 371 So.2d 239 (La.1978); State v. Graham, supra.
This record shows that the jury had sufficient facts and opinion evidence to conclude that the defendant actively desired the consequences of her conduct to result in death or great bodily harm upon the child. The nature of the injuries speaks loudly and clearly. Defendant choked the victim and left her fingernail marks and bruises on the victim's neck. She hit the child with sufficient force to cause the internal injuries which proved fatal. Dr. McCormick opined that great force would have been required to inflict these injuries.
Defendant confessed to choking and striking the victim on the back at least twice with her fist. Finally, defendant's failure to inform the doctors by telling them how the injuries to the victim occurred additionally demonstrates to some measurable degree that defendant actively desired consequences from her conduct to result to the child. Defendant does not *80 offer other reasonable hypotheses or consequences and we do not deduce them from the circumstances. We find no merit in defendant's second assignment.

DECREE
Defendant's conviction is AFFIRMED.