598 So.2d 511 (1992)
STATE of Louisiana
v.
Arthur Edward JONES, Jr.
No. KA 91 0105.
Court of Appeal of Louisiana, First Circuit.
April 10, 1992.
Doug Moreau, Dist. Atty. by Jesse Bankston, Asst. Dist. Atty., Baton Rouge, for plaintiff/appellee.
Johnny Wellons, Baton Rouge, for defendant/appellant.
Before LOTTINGER, EDWARDS and GONZALES, JJ.
GONZALES, Judge.
The defendant, Arthur E. Jones, Jr., was charged by grand jury indictment with second degree murder, a violation of La.R.S. 14:30.1. He pled not guilty and, after trial by jury, was found guilty of the responsive *512 offense of manslaughter, a violation of La. R.S. 14:31. He received a sentence of twelve years at hard labor, with credit for time served. On appeal, defendant alleges as his sole assignment of error that the evidence was insufficient to support the instant conviction.

FACTS
On the evening of November 6, 1989, the defendant and the victim, Elzie Wellington, were patrons at Mae's Cafe on Cadillac Street in Baton Rouge, Louisiana. Both men had been inside the bar for at least an hour without incident. However, as the defendant was returning from the bathroom and the victim was going to the bathroom, the defendant suddenly struck the victim a single time, causing the victim to fall to the concrete floor. Either this fall to the floor or the initial blow struck by the defendant rendered the victim unconscious. The defendant approached the victim and kicked or stomped him one or more times. The defendant's friend, Dare Rowe, grabbed the defendant and escorted him outside. However, the defendant tried to reenter the bar; and Rowe again pulled the defendant outside. Thereafter, the defendant left.
The victim was unconscious for five to ten minutes. When he regained consciousness, he asked what had happened. He got up and was able to speak, walk to the bar, and smoke a cigarette. He gave his car keys to the owner of the bar, Ms. Earls, and asked her to see that his car was returned to his mother's home. The victim then went outside and got into the ambulance by himself. Because the State facility in Baton Rouge (Earl K. Long Hospital) did not have a neurosurgeon on staff, the victim was transferred to Charity Hospital in New Orleans. He died on November 8, 1989.
At the trial, the Coroner, Dr. Alfred Suarez, testified that he performed the autopsy on the victim on November 9, 1989. Dr. Suarez testified that the victim died as a result of a blunt trauma or injury to the head which produced a subdural hematoma. In lay terms, he explained that continued bleeding inside the victim's head produced pressure on the brain, which caused the brain to cease functioning.
Five people witnessed this incident at Mae's Cafe. Four of these witnesses, Matthew Holliday, Jr.; Dorsey Leon Parker; Evelyn J. Harris; and Mae Ella Earls, testified for the State. The other witness, Dare Rowe, testified for the defense. Mr. Holliday was working in the bar that evening as a disc jockey. Mr. Parker testified that he was Mr. Holliday's first cousin. Ms. Harris knew the defendant and was the victim's cousin. Ms. Earls, who owned Mae's Cafe, was serving drinks that evening. The testimony of all four of these State witnesses was essentially the same on every major point. They testified that the defendant started the fight by striking the first blow and that he kicked or stomped the victim one or more times. These witnesses testified that there was no prior fight or argument between the defendant and the victim that evening at the bar. None of these witnesses saw any weapons in the bar that evening. Finally, they indicated that the defendant had to be pulled away from the victim and escorted outside by Mr. Rowe.
However, the defendant testified that he fought the victim in self-defense. According to the defendant, the victim approached him, cursed him, and threatened to shoot him. The defendant claimed that he saw the victim's gun. The defendant also denied kicking or stomping the victim. Instead, the defendant testified that Mr. Parker grabbed him from behind after the fight and that he kicked at Parker in order to free himself.
The defendant's friend, Dare Rowe, testified that he did not see the beginning of the fight. He only saw the victim laying on the floor unconscious. Mr. Rowe also testified that he observed no prior fight or argument between the defendant and the victim. Two defense witnesses, Hamilton Brock and Earl Robinson, testified as to the defendant's good character and good reputation in the community. Both men also testified that the victim carried a gun. In fact, Mr. Robinson testified that the *513 victim had once pulled a gun on him when the two men had had a "disturbance." Two other defense witnesses, Alex Warner and David Quiett, also testified that they had seen the victim carrying a gun in the past.

ASSIGNMENT OF ERROR
In his only assignment of error, the defendant contends that the evidence was insufficient to support the instant conviction. We note that, in order to challenge this conviction on the basis of insufficiency of the evidence, the defendant should have proceeded by way of a motion for post-verdict judgment of acquittal. See La. C.Cr.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error. See State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La. App. 1st Cir.1984). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt.
The defendant was charged with second degree murder, a violation of La.R.S. 14:30.1(A.) which provides, in pertinent part:
Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; ...
However, he was convicted of manslaughter, a violation of La.R.S. 14:31(A.) which provides, in pertinent part:
Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person;...
According to the defendant's trial testimony, the victim began the fight. The defendant stated that the victim threatened to kill him. He also related a prior incident in which he and the victim had exchanged words after a disagreement between the defendant and the owner of the bar, Ms. Earls. Arguably, the defendant's testimony established sufficient provocation to constitute manslaughter. See La.R.S. 14:31(A.)(1). Of course, the State's witnesses testified that the defendant started the fight and struck the first blow. They also indicated that there was no prior fight or argument between the defendant and the victim inside the bar. This version of events is sufficient to establish manslaughter if the defendant lacked the specific intent to kill or inflict great bodily harm upon the victim because the defendant was engaged in the perpetration of an intentional misdemeanor directly affecting the person (second degree battery or simple battery). See La.R.S. 14:31(A.)(2)(a). See also La. R.S. 14:33, 34.1, and 35.
In his brief to this Court, the defendant does not argue that the facts of this case are inappropriate for a manslaughter conviction. Cf. State v. Griffin, 540 So.2d *514 1144, 1149 (La.App. 1st Cir.1989).[1] Instead, he contends that the State failed to prove, beyond a reasonable doubt, that his conduct caused the victim's death. The defendant argues that, had the victim received prompt medical treatment, he would have survived. According to Dr. Suarez's testimony, the defendant notes that the victim died as a result of a subdural hematoma caused by blunt trauma to the head. Dr. Suarez testified that the usual procedure for such a condition was to drill a hole in the skull and drain the blood to release pressure on the brain. Yet, no such procedure was performed; and, therefore, the defendant contends that the State's failure to introduce the victim's medical records and/or produce as witnesses the treating physician(s) and nurses constituted a failure to prove beyond a reasonable doubt that the victim would have died as a result of the injuries inflicted by the defendant even if the victim had received proper medical treatment.
This argument lacks merit. In a homicide prosecution, the criminal agency of the defendant as the cause of the victim's death must be established beyond a reasonable doubt. However, it is not essential that the act of the defendant should have been the sole cause of the victim's death. If the act hastened the termination of life, or contributed directly or indirectly to the victim's death, in a degree sufficient to be a clearly contributing cause, the defendant's act constituted the "legal cause" of death. Another mode of analysis is determining whether or not the defendant's conduct was a substantial factor in bringing about the forbidden result, i.e., the victim's death. See State v. Matthews, 450 So.2d 644, 646-647 (La.1984); State v. Durio, 371 So.2d 1158, 1163-1164 (La.1979).[2] The victim died as a result of a subdural hematoma resulting from a blunt trauma to the head. The defendant's conduct was the "legal cause" of the victim's death. Viewing the evidence in the light most favorable to the prosecution, we find the defendant's conduct hastened the termination of the victim's life, or contributed directly or indirectly to the victim's death, in a degree sufficient to be a clearly contributing (i.e. legal) cause. See State v. LeBouef, 532 So.2d 365 (La.App. 3rd Cir. 1988); State v. Hamilton, 459 So.2d 216, 220-221 (La.App. 3d Cir. 1984).
The defendant also contends that he acted in self-defense. When self-defense is raised as an issue by the defendant, the State has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. Thus, the remaining issue in this case is whether or not a rational fact finder, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant did not kill the victim in self-defense. State v. Spears, 504 So.2d 974, 978 (La. App. 1st Cir.), writ denied, 507 So.2d 225 (La.1987).
La.R.S. 14:20 provides, in pertinent part:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in *515 imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; ...
However, 14:21 provides:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
Several defense witnesses testified that the victim had been known to carry a gun. The defendant testified that the fight began when the victim approached him, cursed him, and threatened to shoot him. According to the defendant, the victim had a gun in his pocket. The defendant specifically testified that he saw the gun.
However, all of the State's witnesses testified that they saw no weapons in the bar and that the defendant started the fight. They testified that, before the fight took place, there had been no argument or disturbance between the defendant and the victim inside the bar. The State witnesses indicated that the defendant struck the first blow, which caused the victim to fall to the concrete floor. The defendant then approached the victim and kicked or stomped him one or more times. Finally, the State witnesses indicated that the defendant had to be restrained by his friend, Dare Rowe, and that, after Rowe escorted the defendant outside, the defendant tried to reenter the bar before Rowe again pulled the defendant back outside the door. This version of the incident indicates defendant was the aggressor and, therefore, he cannot claim self-defense.
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir. 1984). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38. The unanimous guilty verdict returned in this case indicates that the jury clearly rejected the defense theory of justifiable homicide. The fact that the defendant kicked or stomped an unconscious victim and had to be physically restrained by a friend supports such a conclusion.
After a careful review of the record, we conclude that: a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded that the State proved beyond a reasonable doubt that the defendant's infliction of injuries upon the victim was the legal cause of the victim's death; the charged offense of second degree murder was proved (if not the responsive offense of manslaughter); and the defendant did not kill the victim in self-defense.
For all of the above reasons, this assignment of error is meritless.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Even if the evidence was not sufficient to establish all of the elements necessary for a manslaughter conviction, there was sufficient evidence to prove the charged offense, second degree murder. The defendant struck the first and only blow, which knocked the victim to the floor. Either this initial blow, or the resulting fall to the concrete floor, rendered the victim unconscious. Nevertheless, the defendant approached the victim and kicked or stomped him one or more times. While the defendant probably did not intend to kill the victim, we can only conclude that the defendant had the specific intent to inflict great bodily harm upon the victim when he kicked or stomped the victim one or more times as he lay unconscious on the concrete floor. Absent a contemporaneous objection, a defendant cannot complain if the jury returns a legislatively approved responsive verdict (such as manslaughter in the instant case), even where there is not sufficient evidence to support such a verdict, provided that the evidence is sufficient to support the charged offense. State v. Schrader, 518 So.2d 1024, 1034 (La. 1988); State v. Griffin, 540 So.2d at 1149-1150.
[2] The Second Circuit has concluded that a homicide conviction will be upheld in some circumstances even if the medical assistance later rendered to the victim is determined to have been inadequate. State v. Mosely, 475 So.2d 76, 79 (La.App. 2d Cir. 1985).