450 So.2d 644 (1984)
STATE of Louisiana
v.
Lee S. MATTHEWS.
No. 82-KA-2552.
Supreme Court of Louisiana.
May 14, 1984.
*645 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., James Maxwell, David C. Loeb, Paul Connick, Jr., Abbott J. Reeves and Louise Korns, Asst. Dist. Attys., for plaintiff-appellee.
Frank J. Uddo, New Orleans, for defendant-appellant.
MARCUS, Justice.
Lee S. Matthews was indicted by the grand jury for the second degree murder of Dorothy A. Pennino in violation of La.R.S. 14:30.1. After trial by jury, he was found guilty as charged and sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. On appeal,[1] defendant relies on fourteen assignments of error for reversal of his conviction and sentence. Eleven of these assignments of error do not present reversible error nor do they involve legal issues not governed by clearly established principles of law. They will be treated in an appendix which will not be published but which will comprise part of the record in this case. The three remaining assignments of error involve the sufficiency of the evidence to support defendant's conviction.

FACTS
Defendant and his stepson, James Marchadie, were originally charged together with the murder of Dorothy Pennino. Marchadie, age 24, pled guilty to manslaughter in July 1981 and was sentenced to serve seventeen years at hard labor. He testified at defendant's trial in April 1982 that defendant and he had decided the night of June 29, 1980 to make Mrs. Pennino, their next door neighbor, stop her constant quarrelling with their family. Defendant and Mrs. Pennino had had an affair which apparently defendant had broken off some time before. Thereafter, Mrs. Pennino had *646 instigated fights and frequent vulgar shouting matches with defendant's family. One such altercation led to defendant's and Marchadie's decision to take Mrs. Pennino out somewhere that night and beat her up to get her to quit. Defendant and Marchadie agreed that while Marchadie hid under a blanket behind the back seat, defendant would get Mrs. Pennino into the station wagon by telling her they were going to make love somewhere. Defendant did pick Mrs. Pennino up and then drove to a secluded spot along the Intracoastal Waterway. Marchadie testified he heard defendant and Mrs. Pennino exit the car and a minute later heard a loud slap. Marchadie came out of the car and grabbed Mrs. Pennino by both shoulders as she ran back towards the car. As they yelled at each other, Marchadie shook her and struck her with an open hand across her face. Defendant then came up behind her and hit her in the back of the head. Mrs. Pennino went limp and Marchadie turned her loose, whereupon she fell to her knees and then forward on her face. Defendant dropped his knee in the middle of her back and grabbing the back of her head with both hands smashed her face into the concrete several times. Defendant and Marchadie picked up the unconscious Mrs. Pennino and placed her still face down over the highway railing onto the sloping ground above the canal. Before driving off, Marchadie went back and rolled her over on her back, concluding then that "we had killed her." The numerous photographs of the crime scene identified by Marchadie and police officers at trial show that at that location the small area between the highway railing and the canal slopes sharply down to the nearby water.
Mrs. Pennino's body was found floating at the edge of the canal the next night, June 30, 1980. On the roadway above, the police discovered jewelry and other items belonging to Mrs. Pennino, a pool of blood and a pair of sunglasses belonging to one of defendant's stepchildren. Dr. Patrick Besant-Matthews, the pathologist who performed the autopsy, testified that the cause of death was drowning. He was unable to determine whether or not the victim had been beaten about the face because of the significant tissue deterioration caused by exposure to water and marine organisms. He further testified that while he had found evidence of alcohol in Mrs. Pennino, much of that was produced by the body's decompensation or fermentation and thus she probably had had two or three drinks at most before her death.

ASSIGNMENT OF ERROR NO. 2
Defendant contends the trial judge erred in denying his motion for a new trial on the ground that the state did not prove defendant caused the victim's death. He argues that the victim died from drowning rather than from injuries sustained in the beating.
In a prosecution for murder, the criminal agency of defendant as the cause of the victim's death must be established beyond a reasonable doubt. This court has held that "[i]t is not essential that the act of the defendant should have been the sole cause of the death; if it hastened the termination of life, or contributed, mediately or immediately, to the death, in a degree sufficient to be a clearly contributing cause, that is sufficient." State v. Wilson, 114 La. 398, 38 So. 397 (1905) (death from pneumonia caused by gunshot wound); State v. Matthews, 38 La.Ann. 795 (1886); State v. Scott, 12 La.Ann. 274 (1857). A similar standard for determining causation-in-fact approved by LaFave and Scott in their treatise on criminal law was adopted by this court in State v. Durio, 371 So.2d 1158 (La.1979): "Was the defendant's conduct a substantial factor in bringing about the forbidden result?" W. LaFave and A. Scott, Handbook on Criminal Law § 35, at 250 (1972). Accord F. Wharton, Criminal Law § 26, at 126 (14th ed. 1978); O. Warren, Homicide § 71 (1938); see also Henderson v. Kibbe, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977) (defendant's conduct was a "sufficiently direct cause of the ensuing death" under New York law to sustain a conviction of murder in the second degree where defendant and another *647 robbed an intoxicated man and left him on the highway where he was killed by a speeding truck); State v. Chavers, 294 So.2d 489 (La.1974), cert. denied, 419 U.S. 1111, 95 S.Ct. 786, 42 L.Ed.2d 808 (1975) (manslaughter conviction sustained where victim was discovered two days after having died of a heart attack caused by aggravation of his pre-existing heart condition during his beating and robbery by defendant and another). In Durio, this court affirmed convictions for second degree murder, even though the victim died of bronchial pneumonia and not from her head injuries inflicted during her beating by defendants, because the defendants' conduct was established as the "legal cause" of her death by the evidence showing that the probable cause of the pneumonia was the victim's weak condition due to those injuries.
It is equally clear that the legal cause of Mrs. Pennino's death was the beating inflicted on her by defendant. He battered the victim into unconsciousness by smashing her head into concrete and then left her body in an isolated spot at night on the slope directly above the canal where she was found drowned the next evening. While the immediate cause of death was drowning, these acts of defendant were a clearly contributing cause even if the victim rolled, crawled or stumbled into the water.
In sum, the evidence clearly supports findings that defendant had specific intent to at least inflict great bodily harm on Mrs. Pennino and that his conduct was a substantial factor in bringing about her death. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the state proved beyond a reasonable doubt the essential elements of second degree murder. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Therefore, the motion for a new trial was properly denied.
Assignment of Error No. 2 is without merit.

ASSIGNMENTS OF ERROR NOS. 3 AND 4
Defendant contends the trial judge erred in denying his motion for a new trial on the ground the state failed to prove he beat the victim except by the uncorroborated testimony of an accomplice.
Marchadie testified that he was present and helped while defendant beat Mrs. Pennino into unconsciousness. The trial judge instructed the jury on the credibility of witnesses and specifically on accomplice testimony. See State v. Hamilton, 312 So.2d 656 (La.1975). The jury in weighing Marchadie's credibility had the benefit of a full cross-examination which revealed no promises were made in exchange for his prior plea of guilty to manslaughter, seventeen-year sentence and testimony at defendant's trial.
A jury may convict upon an accomplice's uncorroborated testimony. State v. Hamilton, supra; State v. Matassa, 222 La. 363, 62 So.2d 609 (1952). This court on appeal will not assess the credibility of witnesses or reweigh the evidence to overturn a factfinder's determination of guilt. State v. Trosclair, 443 So.2d 1098 (La.1983). Viewing the evidence in the light most favorable to the prosecution, we find a rational trier of fact could have concluded the state proved defendant's guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Hence, the trial judge did not err in denying the motion for a new trial.
Assignments of Error Nos. 3 and 4 are without merit.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
NOTES
[1] This matter was previously before this court.

After the trial judge denied defendant's and his wife's pretrial motions to suppress inculpatory statements given to police officers following their arrests, we granted certiorari and after argument amended the trial judge's rulings to grant the motions to suppress the statements and remanded the case for further proceedings. State v. Matthews, 408 So.2d 1274 (La.1982).