LeBLANC, Judge.
Defendant, Stanley Maurice Simmons, was charged by bill of information with thirty-nine counts of forgery, in violation of La.R.S. 14:72. He was tried by jury and found guilty as charged on each of the counts. Defendant was adjudicated a second felony offender. Thereafter, the court imposed sentence as follows: For the conviction of Count One, defendant was sentenced to serve five years at hard labor. For the conviction of Count Two, defendant was sentenced to serve five years at hard labor, to be served consecutively to the sentence imposed for Count One. For the conviction of Count Three, defendant was sentenced to serve five years at hard labor, to be served consecutively to the sentences imposed for Counts One and Two. For the conviction of Count Four, the court imposed a sentence of five years at hard labor, to be served consecutively to the sentences imposed for Counts One, Two and Three. For the convictions of Counts Five through Thirty-nine, the court imposed a sentence of five years each at hard labor, to be served concurrently with each other and consecutively to the sentences previously imposed. Defendant appealed, urging six assignments of error and briefing all of them in one argument.
FACTS
Defendant was arrested in connection with his participation in a check forgery ring which operated in Houma, Louisiana, in April, 1985. The group was comprised of three partners: defendant, Joseph Johnston, and Jimmy Penix, each of whom contributed to the initial expense money, and several other individuals who cashed the checks in return for a percentage of the proceeds. Part of the funds were used to open a checking account in the name of a fictitious company. Thereafter, payroll checks were written on the account and taken by the other participants, who cashed the checks at area grocery stores. Approximately five persons actually cashed the forged checks. The individuals cashing the checks were permitted to keep one-third of the proceeds of each check. Detailed accounting records were maintained on the operation. After cashing approximately ten checks, the participant received a bonus check in the amount of $100.00 and was permitted to cash and keep the entire amount. Each partner received one-third of the remaining proceeds generated by the cashed checks, approximately $4,000.00.
The state presented the testimony of two of the participants, Elizabeth Johnston and her brother, Joe Bullard. Elizabeth Johnston is married to Joseph Johnston, one of the partners. Although she was aware of the extent of the operation, her participation was apparently limited to the fabrication of a name for the phony company, the creation of aliases for the individuals cashing the checks, and assistance with the manufacture of drivers licenses in the names assumed by the check cashers. Mrs. Johnson specifically testified that she created the name “Warren Construction Company” for this operation, as well as “Dale F. Warren”, the name of the only authorized drawer. She further testified that she did not accompany her husband to Houma for the actual operation.
Joe Bullard, the brother of Elizabeth Johnston, participated in the operation as one of the individual check cashers. He testified that he met defendant in a hotel room in Houma to receive his checks. He further testified that defendant was known to be the day to day manager of the operation. Bullard identified each of the participants.
Many of the people involved in the scheme were from north Louisiana, and Elizabeth Johnston testified that the operation was planned at her home near Monroe. *30 Both Mrs. Johnston and Joe Bullard admitted to participation in similar schemes at several other locations and that defendant also had been involved in those operations. The Houma area was carefully chosen because the organizers felt the economy of the region would permit the operation to be lucrative with relative ease. Nevertheless, the planners instructed the check cashers to operate in pairs, with one of the two standing watch with a radio to report trouble. The organizers also provided city maps and business pages from a local telephone directory in order for the cashers to locate stores where the checks could be cashed. The addresses of stores that readily accepted the checks were broadcast over the radio to the other teams.
Although Elizabeth Johnston and Joe Bullard were given immunity from prosecutions for offenses occurring within the judicial district in return for their testimony, Mrs. Johnston stated that she would have testified without the grant of immunity. Her husband pled guilty to thirty-nine counts of forgery and received fifteen years for his participation; however, he escaped from the Houma City Jail while awaiting sentencing and had not been apprehended at the time of trial. John K. Thomas and Katherine Patricia Henry, two of the check cashers, were also granted immunity but refused to testify.
EVIDENCE OF CONSPIRACY
By each of defendant’s assignments of error, he contends the court erred by permitting the introduction of evidence of a conspiracy. He claims that the court erred by concluding that a prima facie case of conspiracy was established and by relying exclusively on hearsay evidence to support that conclusion.
La.R.S. 15:455 provides as follows:
Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established.
Thus, hearsay statements of a coconspirator are admissible if a prima facie case of conspiracy is established. See State v. Nall, 439 So.2d 420 (La.1983). However, it must be shown that the declaration was made in furtherance of the common enterprise and during its continuation. State v. Dupree, 377 So.2d 328 (La.1979). Proof of a conspiracy may be made by direct or circumstantial evidence. State v. Brown, 398 So.2d 1381 (La.1981). A prima facie case of conspiracy is presented when the State introduces evidence which, if unre-butted, would be sufficient to establish the fact of conspiracy. State v. Brown, supra. The State cannot rely on the eoconspirator’s declaration alone to supply the prima facie case of conspiracy; the existence of the conspiracy must be established by separate admissible evidence. State v. Johnson, 438 So.2d 1091 (La.1983). However, the state can introduce hearsay statements if it introduces independent evidence which shows that the existence of a conspiracy was more probable than not. See State v. Bell, 346 So.2d 1090 (La.1977).
The trial court conducted a hearing out of the presence of the jury in order for the State to attempt to establish that a conspiracy existed. Elizabeth Johnston and Joe Bullard testified at the predicate hearing and related the facts previously set forth. The trial court specifically found that the state had established the existence of a conspiracy. Thereafter, the jury was returned; and the witnesses repeated their testimony.
Although defendant argues that the court’s conclusion that a conspiracy existed was based solely on hearsay evidence, the record reflects that both Johnston and Bul-lard testified to facts based on direct observation. Elizabeth Johnston testified that she assisted in the implementation of the conspiracy by creating false names and drivers licenses to be used in the plan. Bullard testified that he attended an organizational meeting at Johnson’s home and *31 participated in the actual check-cashing operation. The testimony of these two witnesses established that a conspiracy existed to obtain funds by passing worthless forged checks.
Bullard was unable to recall whether or not defendant was present at the organizational meetings or whether or not defendant was present when he returned his checks and money. However, Bullard specifically testified that he obtained the first batch of checks from defendant at a hotel. Thus, direct evidence identified defendant as an actual participant in the conspiracy. Thereafter, testimony by Mrs. Johnston in which she related details provided by her husband were fully admissible.
Defendant suggests the testimony of Johnston and Bullard is not credible because they are allegedly coconspirators. This Court on appeal will not assess the credibility of witnesses or reweigh the fact-finders’ determination of guilt. See State v. Matthews, 450 So.2d 644 (La.1984). A jury may convict upon an accomplice’s uncorroborated testimony. Id.
We find, therefore, that the trial court properly concluded that a conspiracy to pass these checks existed and that defendant was a member of this conspiracy. Defendant’s assignments of error have no merit.
AFFIRMED.