563 So.2d 228 (1990)
STATE of Louisiana
v.
Anita KALATHAKIS.
No. 89-K-1199.
Supreme Court of Louisiana.
June 4, 1990.
Concurring Opinion June 12, 1990.
Concurring Opinion June 19, 1990.
*229 David J. Williams, Lake Charles, for State of La., defendant-applicant.
Richard P. Ieyoub, Dist. Atty., Elizabeth S. McCall, Beth Conrad, Asst. Dist. Attys., Patricia Minaldi, for Anita Kalathakis, plaintiff-respondent.
Concurring Opinion by Justice Dennis June 12, 1990.
Concurring Opinion by Justice Watson June 19, 1990.
LEMMON, Justice.[*]
The principal issue in this case is whether the felony-murder/manslaughter doctrine may be extended to include the killing by the police of defendant's co-perpetrator of the underlying felony, after the police had chased the co-perpetrator from the scene of the felony into the woods and had shot the co-perpetrator in retaliation to gunfire instigated by the co-perpetrator.
The police had suspected that Patrick Langley and defendant were manufacturing methamphetamine in the mobile home where they resided together. On February 7, 1987, a police informant purchased a controlled dangerous substance from Langley. The following night fourteen police officers, divided into two assault teams, went to the mobile home to conduct a raid.
The members of the first team, accompanied by two trained police dogs, approached the trailer on foot through the woods. These officers observed a heavily armed man, later identified as Larry Calhoun, leave the rear of the trailer and walk toward a shed. The dogs with Calhoun apparently sensed the police dogs and began barking, alerting Calhoun to the presence of the police. Calhoun directed his flashlight toward the officers. When the officers identified themselves, Calhoun began running down the driveway just as the members of the second assault team were approaching.
Three officers and the dogs pursued Calhoun. During the chase, at a point approximately one-quarter of a mile from the trailer, Calhoun turned quickly and shot one of the officers. The other officers returned the fire and killed Calhoun.
In the meantime the second assault team approached the trailer down the main driveway. Trooper Dan Daughtery entered the trailer first, shouting, "Police coming in". Deputy Dale Folds, looking through the bedroom window, saw defendant with her finger on the trigger of a pistol raised above her head, standing in a "combat stance" as if she were waiting to shoot whoever entered the room. Knowing that police officers had entered the trailer, Deputy Folds broke the bedroom window and ordered defendant to drop the weapon. Trooper Daughtery, who was making his way through the trailer, heard the glass breaking and the shouted order to drop the gun. Daughtery ran toward the sound, kicked in the bedroom door, and found defendant.
Daughtery then heard noises coming from the bathroom that could only be entered through the bedroom in which he found defendant. He kicked in the bathroom door and saw Langley pouring a dark brown liquid down the bathtub drain. Daughtery noticed a heavy chemical odor which he recognized as that produced during the manufacture of methamphetamine. Both Langley and defendant were arrested.
Langley pleaded guilty to manufacturing methamphetamine. He subsequently testified at defendant's trial that defendant did not assist in the operation and threatened to leave him when she learned he was involved in manufacturing the drug.
Defendant was convicted of attempted manufacturing of methamphetamine, manslaughter of co-perpetrator Calhoun, and attempted manslaughter of Deputy Daughtery.[1] She was sentenced to concurrent *230 terms of five, four and two years respectively.
The court of appeal affirmed the convictions. 543 So.2d 1004. As to the conviction for the manslaughter of Calhoun, the court concluded that Calhoun died as a direct result of defendant's acts of attempting to manufacture drugs. The court reasoned that the drug manufacturers' arming themselves, as part of the overall scheme, set into motion a chain of events which created a great risk of harm and that Calhoun's death was "within the ambit of reasonably foreseeable possibilities". 543 So.2d at 1008.
Defendant's application for certiorari was granted to review the felony-manslaughter conviction. 548 So.2d 1240.
La.Rev.Stat.Ann. 14:31, which defines the crime of manslaughter, provides in part:
Manslaughter is:
. . . .
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1. or of any intentional misdemeanor directly affecting the person. (emphasis added).
Thus, a homicide, committed without any intent on the part of the accused to cause death or great bodily harm, may qualify as (1) felony-murder if the homicide occurs when the accused is engaged in certain dangerous felonies enumerated in La.Rev. Stat.Ann. 14:30 or 30.1, or as (2) felony-manslaughter if the homicide occurs when the accused is engaged in any other felony (which the Legislature apparently considered to be less dangerous).
In the present case the prosecutor's theory of felony-manslaughter was that a homicide (the killing of a human being by the act of another) occurred when defendant was engaged in the attempted manufacture of methamphetamine, although defendant had no intent to cause death or great bodily harm to Calhoun.
Defendant contends that Section 31(2)(a) does not encompass the killing by police officers of a co-perpetrator of the underlying felony one-fourth of a mile from the place where the underlying felony was committed. She relies on State v. Garner, 238 La. 563, 115 So.2d 855 (1959), in which the defendant, while involved in an argument with a bartender, lunged at the bartender with a knife, prompting the bartender to shoot a pistol at the defendant in self defense. The bullet missed the defendant, but struck and killed an innocent bystander. This court reversed the defendant's conviction of manslaughter, holding that the manslaughter statute did not make the defendant responsible for a killing resulting from a self-defensive act committed by the attacked person. The court indicated that the actual killer must be the defendant or a principal with the defendant in the perpetration of the underlying felony.
On the other hand, the prosecutor contends that the theory of proximate cause used in State v. Statum, 390 So.2d 886 (La.1980), cert. denied, 450 U.S. 969, 101 S.Ct. 1489, 67 L.Ed.2d 619 (1981), should control this case. In Statum the thirteen-year old victim jumped from the defendant's moving car under the compulsion of an imminent sexual assault by the defendant and died the next day of multiple injuries sustained in the fall. The court, noting that the victim jumped from the car "because of the attempted carnal knowledge of a juvenile violation", held that the defendant was properly convicted of manslaughter. Although the victim's act of jumping from the car caused her death, the defendant's conduct was the precipitating cause of her jumping.
*231 In the present case the court of appeal distinguished the Garner decision on the basis that the victim in Garner was an innocent bystander, while the victim in this case was a co-perpetrator of the underlying felony. However, the identity of the victim is hardly a sufficient factor to justify refusing to apply Garner in this case. Accordingly, the prosecutor urges that we consider modifying Garner and adopting a less restrictive theory of causation in felony-murder/manslaughter cases.
Criminal conduct in Louisiana consists of (1) conduct producing criminal consequences combined with criminal intent, (2) conduct producing criminal consequences without any requirement of criminal intent, and (3) criminal negligence. La. Code Crim.Proc. art. 8. Intentional crimes traditionally have consisted of two elements, the physical element of act or conduct and the mental element of intent. The felony-murder doctrine originally applied to the intent element of a crime in that the doctrine allowed the mens rea of the underlying felony to provide the malice necessary to transform an unintended homicide into a murder.[2] W. Clark & W. Marshall, A Treatise on the Law of Crimes § 10.07 (7th ed. 1967); W. LaFave & A. Scott, Criminal Law §§ 71, 79 (1972); R. Perkins, Criminal Law §§ 37, 44 (2d ed. 1969). On the other hand, the physical element of the defendant's act or conduct is not encompassed by the felony-murder doctrine, but involves a separate question of causation. The additional element of the defendant's act or conduct in causing criminal consequences must still be proved.
A causal relation between the defendant's conduct and the harm for which the prosecutor seeks to impose criminal sanctions is an essential element of every crime. Causation is a question of fact which has to be considered in the light of the totality of circumstances surrounding the ultimate harm and its relation to the actor's conduct. M. Bassiouni, Substantive Criminal Law, §§ 5, 5.2 (1978). A defendant should not be held responsible for remote and indirect consequences which a reasonable person could not have foreseen as likely to have flowed from his conduct or from those consequences which would have occurred regardless of his conduct. Id.
Some jurisdictions have adopted the Garner rationale and limited the felony-murder and the felony-manslaughter doctrines to cases in which the conduct that caused the death was the conduct of the defendant, or of his accomplice or confederate, done in furtherance of the design to commit the felony.[3] See Commonwealth v. Redline, 391 Pa. 486, 137 A.2d 472 (1958), which held that the doctrine did not apply when shots by policemen returning the defendant's fire during an armed robbery killed the defendant's co-perpetrator. The court, stating that "[d]eath must be a consequence of the felony ... and not merely coincidence", noted that the officers' conduct in shooting the accomplice was lawful and could not support a charge of murder. Id. 137 A.2d at 476.
The comment in Note, Recent Cases, 71 Harv.L.Rev. 1565 (1958), discussing the Redline decision, stated:
It seems preferable, however, to impose liability only for homicides resulting from acts done in furtherance of the felony. A closer causal connection between the felony and the killing than the proximate-cause theory normally applicable to tort cases should be required because of the extreme penalty attaching *232 to a conviction for felony murder and the difference between the underlying rationales of criminal and tort law. The former is intended to impose punishment in appropriate cases while the latter is primarily concerned with who shall bear the burden of a loss. Requiring this closer causal connection, although it precludes the imputation of the act of killing under the felony-murder rule, would not relieve a felon from responsibility for homicides committed by a cofelon since one member of a conspiracy is responsible for the acts of his coconspirators committed in furtherance of the object of the conspiracy.
A felony (such as robbery) which involves a homicide is qualitatively more blameworthy than a mere robbery. Crump & Crump, Articles in Defense of the Felony Murder Doctrine, 8 Harv.J. of Law & Pub.Pol'y. 359 (1985). However, there is logical justification for punishing a robber for an unintended murder or manslaughter occurring during the course of the robbery only when the robber's conduct was a legal cause of the homicide. Something more is required than "but for" causation. Michael & Wechsler, A Rationale of the Law of Homicide, 37 Col.L.Rev. 724 (1937).
This court in State v. Matthews, 450 So.2d 644 (La.1984), stated that legal cause in criminal cases requires that the defendant's act was a "substantial factor in bringing about the forbidden result". See W. LaFave & A. Scott, Criminal Law § 35 (1972). The Matthews case involved a prosecution for second degree murder in which the defendant and a companion beat the victim into unconsciousness and left her for dead on the sloping bank of a canal. The victim's body was found in the canal, and the pathologist determined that her death was caused by drowning. This court concluded that the beating was a substantial contributing cause of the victim's death even if she rolled, crawled or stumbled into the water and drowned.
Causation was also at issue in State v. Taylor, 463 So.2d 1274 (La.1985). The Taylor case was a prosecution for vehicular homicide, a crime defined in part as "the killing of a human being caused proximately or caused directly by an offender engaged in the operation of ... any motor vehicle ..., whether or not the offender had the intent to cause death or great bodily harm, when (1) the offender is under the influence of alcoholic beverages ...", as determined by blood alcohol tests. This court held that the legislative intent to punish a person whose unlawful blood alcohol concentration combined with his vehicle operation to cause the death of a human being required the prosecutor to prove a causal link between the blood alcohol level and the killing.
In the present case the felony-manslaughter rule embodied in La.Rev.Stat. Ann. 14:31(2)(a) permits defendant's conviction for the homicide, despite defendant's lack of intent to cause death or great bodily harm, but the prosecutor was also required to prove that defendant's conduct was a legal cause of the killing. Unlike the defendant's conduct in Statum in making sexual advances which caused a minor to jump from the car to her death, this defendant's conduct in attempting to produce methamphetamine can hardly be determined to be a substantial factor in the killling of Calhoun. This killing, in the manner in which it occurred, was not reasonably forseeable when defendant set out to manufacture drugs. Moreover, Calhoun's flight to evade the police and his firing at his pursuers were intervening acts which weakened any causal relationship between defendant's manufacturing of drugs and the killing.[4]
On the evidence in the present case a rational juror could have found that Calhoun would not have been killed in the *233 woods but for the drug manufacturing operation being conducted by Langley, Calhoun and defendant in the trailer. However, even if we were inclined to modify Garner by adopting a less restrictive theory of causation in felony-manslaughter cases, the evidence in the present case was insufficient for a rational juror to conclude that defendant's conduct related to the manufacturing of drugs was a substantial factor in bringing about Calhoun's death.[5]
The portion of the judgment of the court of appeal affirming defendant's conviction and sentence for manslaughter is reversed, and defendant is discharged as to that charge. In all other respects the judgment of the court of appeal is affirmed.
DENNIS and WATSON, JJ., concur and file opinion.
DIXON, C.J., concurs in part and dissents in part.
DENNIS, Justice, concurring with reasons.
I respectfully concur in the result and in the majority's reaffirmance of the rule of State v. Garner, 238 La. 563, 115 So.2d 855 (1959) that in order to support a felony murder or felony manslaughter conviction, the actual killer must be either the defendant or a coperpetrator of the felony. However, I disagree with the court's dicta in footnote 1 of the opinion, wherein it indicates that evidence sufficient to support an attempted second degree murder conviction is sufficient to support a conviction for attempted manslaughter as a matter of law. As I indicated in my dissent in State ex rel. Elaire v. Blackburn, 424 So.2d 246, 253 (La.1982) (Dennis, J., dissenting), in my opinion, due process requires proof beyond a reasonable doubt of every element of an offense before a person may be convicted and punished. Accordingly, even if a verdict is statutorily responsive to a particular charge, unless there is sufficient evidence to support every element of the offense of which the defendant is convicted, the conviction cannot stand. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); cf. State v. Booker, 385 So.2d 1186 (La.1980) (on rehearing).
WATSON, Justice, concurring.
There appears to be a total lack of legal causation between the defendant's unlawful activities and the death of Calhoun. Therefore, the conviction of the defendant for manslaughter must be reversed. I respectfully concur.
NOTES
[*] Retired Chief Justice John A. Dixon, Jr. participated in this case, having been a member and Chief Justice of this court when the case was orally argued and taken under advisement.
[1] Defendant's conviction for the attempted manslaughter of Deputy Daughtery was based on defendant's lying in wait behind the bedroom door with a loaded pistol, knowing that police had entered the building, with the intent to use the gun to prevent police officers from entering the bedroom. On this evidence a rational juror could have concluded beyond a reasonable doubt that defendant lay in wait with a dangerous weapon with the intent to kill a police officer. See La.Rev.Stat.Ann. 14:27B. Defendant was charged with attempted murder, and the jury returned a verdict of attempted manslaughter. Nevertheless, since the evidence was sufficient to support the charged offense, it was also sufficient to support the verdict of attempted manslaughter (although the latter required the additional element of an underlying felony). State ex rel Elaire v. Blackburn, 424 So.2d 246 (La.1982).

The evidence was also clearly sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was a principal in the crime of manufacturing methamphetamine.
[2] In defining felony-manslaughter, the Legislature did not create a crime in which the requisite mens rea of La.Rev.Stat.Ann. 14:31(1) is presumed. Rather, the Legislature created a separate crime in which intent is simply not an element. See Crum, Causal Relations and the Felony-Murder Rule, 1952 Wash.U.L.Q. 191 (1952).
[3] This is the "act or constructive act" rule described in Note, Criminal LawThe Felony Manslaughter Doctrine in Louisiana, 20 La.L. Rev. 752 (1960), an article prompted by the Garner decision. Under this rule the defendant cannot be held responsible for a homicide attendant to a felony unless the fatal act was actually or constructively his own. The act is constructively that of the defendant when done by someone acting in concert with him or in furtherance of a common purpose.
[4] Perhaps if Deputy Folds, when defendant was lying in wait with a weapon guarding the bathroom where Langley was disposing of the drugs, had fired at defendant and killed Trooper Daughtery by accident, then a different decision on causation might be required. However, defendant's arming herself to resist the police attack on the drug manufacturing operation in the trailer had no significant causal relationship with the events occurring in the woods and with the officers' retaliatory fire in response to Calhoun's shots.
[5] The trial judge conceded at sentencing that the jurors did not wish to hold defendant responsible for Calhoun's death, but felt required to do so under the law given by the judge. The judge also stated his own conclusion that Calhoun would have been killed that night even if defendant had not been present in the trailer.