GUIDRY, J.,
dissents and assigns reasons.
hi respectfully dissent from the majority’s interpretation of La.Rev.Stat. *816 14:30.1(A)(2), which provides that “[second degree murder is the killing of a human being: ... When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, second degree kidnapping, aggravated escape, assault by drive-by shooting, armed robbery, first degree robbery, second degree robbery, simple robbery, cruelty to juveniles, second degree cruelty to juveniles, or terrorism, even though he has no intent to inflict great bodily harm.” I do not subscribe to the majority’s view that the “agency test” set forth in State v. Garner, 238 La. 563, 115 So.2d 855 (1959), and subsequent cases, precludes a prosecution for second degree murder based on the underlying felony crime of cruelty to juveniles when that proscribed conduct involves the criminal negligence of lack of supervision, on the basis there is no “direct act” of killing. Cruelty to juveniles is defined as the “intentional or criminally negligent mistreatment or neglect by anyone seventeen years of age or older of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child.” La.Rev.Stat. |214:93(A)(1). Although the “agency test” may have resolved specific questions of whether a defendant can be held criminally culpable for a killing committed by a third person, it does not, in my view, address the issue presented in this case, in which the underlying felony is cruelty to juveniles and a third party did not intervene to kill the victim.
This court addressed the type of causal connection the state must show between a defendant’s conduct and the victim’s death to be criminally culpable for murder in State v. Matthews, 450 So.2d 644 (La.1984).[1] “In a prosecution for murder, the criminal agency of defendant as the cause of the victim’s death must be established beyond a reasonable doubt. This court has held that ‘[i]t is not essential that the act of the defendant should have been the sole cause of the death; if it hastened the termination of life, or contributed, medi-ately or immediately, to the death, in a degree sufficient to be a clearly contributing cause, that is sufficient.’ ” Matthews, 450 So.2d at 646 (quoting State v. Wilson, 114 La. 398, 38 So. 397 (1905) (involving death from pneumonia caused by gunshot wound)). The Matthews court noted that a similar standard for determining causation-in-fact was adopted by the court in State v. Durio, 371 So.2d 1158 (La.1979). Matthews, 450 So.2d at 646. In Durio, this court found the state could establish causation by showing the “defendant’s conduct was a substantial factor in bringing about the forbidden result.” Durio, 371 So.2d at 1163-64. See also State v. Jones, 598 So.2d 511, 514 (La.App. 1 Cir.1992) (“Another mode of analysis is determining whether or not the defendant’s conduct was a substantial factor in bringing about the forbidden result, i.e., the victim’s death.”); State v. Beason, 26,725, p. 7, (La.App. 2 Cir. 4/7/95), 653 So.2d 1274, 1280 (“It is sufficient for the defendant’s acts to be a ‘contributing cause’ or a ‘substantial factor’ in the resulting death.”).
*817 This case presents the question of whether defendant’s proscribed conduct of cruelty to juveniles can be considered a contributing cause or substantial factor in the victim’s death. The majority summarizes gross parental neglect prosecutions like the present one, but that summary also demonstrates that the instant case, in which a child was left home alone and a fire broke out, is not unprecedented. Furthermore, it is not unforeseeable that a child, who is left unattended in the home for a significant period of time, will die in an accidental fire.
This court framed the issue in State v. Kalathakis, 563 So.2d 228 (La.1990), cited by the majority, in terms of what consequences are reasonably foreseeable: “A defendant should not be held responsible for remote and indirect consequences which a reasonable person could not have forseen as likely to have flowed from his conduct or from those consequences which would have occurred regardless of the conduct.” Kalathakis, 563 So.2d at 231. Thus, in Kalathakis, the lolling of a co-felon, when he fled from police and fired at his pursuers, was not reasonably foreseeable. See Kalathakis, at 232 (“This killing, in the manner which it occurred, was not reasonably foreseeable when defendant set out to manufacture drugs.”). Therefore, “although [the fleeing co-felon] would not have been killed in the woods but-for the drug manufacturing operation, the manufacturing of drugs was not a substantial factor in bringing about the death.” Kalathakis at 232-33.
By contrast, in the present case, it was reasonably foreseeable, at the time defendant left her children unattended, that unattended children face many substantial risks including the danger posed by accidental fire. See People v. Perez, 2009 WL 57599, 4 (N.Y.City Crim.Ct.2009) (“as is commonly known, household accidents resulting in injury to children including suffocation, falls, 14drowning, burns and poisoning occur suddenly and swiftly”); State v. Goff, 297 Or. 635, 637, 686 P.2d 1023 (1984) (“[e]very responsible adult should know that fire is a likely danger when children are left alone with access to matches”). Here, the jury could have reasonably found on the evidence that leaving the child unsupervised for a substantial period of time was a substantial factor in bringing about the child’s death from the consequences of the accidental fire.
Criminal responsibility is properly assessed against one whose conduct was a direct and substantial factor in producing the death even though other factors combined with the conduct to achieve the result. As this court noted in Matthews, 450 So.2d at 646, the inquiry is as follows: “Was the defendant’s conduct a substantial factor in bringing about the forbidden result?” In the present case, the record contains evidence that the child victim suffered carbon monoxide poisoning from a slowly developing kitchen fire, which type of fire typically has a very low fatality rate, and further that young children typically respond inappropriately to fire and are thus less likely than adults to escape without assistance. Thus, in my view, the record contains sufficient evidence, when viewed in the light most favorable to the prosecution under the standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), on which to conclude that defendant’s grossly neglectful failure to supervise her child was the legal cause of the child’s unjustifiable pain or suffering, and ultimately her death.
Finally, although the majority bolsters its interpretation of the second degree murder statute by noting that the legislature was surely aware of Garner and its progeny when it amended the second degree murder statute in 1997, it is also *818 equally reasonable to say the legislature was aware of that line of cases but declined to be so restricted outside situations in which a third party killed the victim, when it added the underlying felonies of cruelty to juveniles and second |.r,degree cruelty to juveniles, with the clear knowledge that those felonies proscribe conduct described as the “intentional or criminally negligent mistreatment or neglect by anyone over the age of seventeen to any child under the age of seventeen,” either “whereby unjustifiable pain and suffering is caused to said child,” La.Rev.Stat. 14:93(A)(1), or “which causes serious bodily injury or neurological impairment to that child.” La.Rev.Stat. 14:93.2.3. The legislature was firmly within its prerogative of determining that the killing of a child while the offender is engaged in the prohibited conduct of “intentional or criminally negligent treatment or neglect” of a child would be subject to prosecution for second degree murder.
For these reasons, I would uphold the defendant’s conviction for second degree murder.

. In Matthews, defendant was convicted of the second degree murder of Dorthy Pennino and appealed contending, inter alia, that the state did not prove he caused her death. Defendant and a partner had beat the victim into unconsciousness and left her on the sloping bank of a canal. She drowned. The Matthews court found that “[w]hile the immediate cause of death was drowning, these acts of defendant were a clearly contributing cause even if the victim rolled, crawled or stumbled into the water.” Matthews, 450 So.2d at 646-47.