STATE OF LOUISIANA                    *         NO. 2024-KA-0349

VERSUS                                *

                                                COURT OF APPEAL
TRACEY T. WRIGHT                      *
                                                FOURTH CIRCUIT
                                      *
                                                STATE OF LOUISIANA
                        * * * * * * *


                            APPEAL FROM
            CRIMINAL DISTRICT COURT ORLEANS PARISH
                  NO. 558-104, SECTION "B"
              Honorable Tracey Flemings-Davillier
                        * * * * * *
                 **Judge Nakisha Ervin-Knott**
                        * * * * * *

(Court composed of Judge Paula A. Brown, Judge Rachael D. Johnson, Judge
Nakisha Ervin-Knott)


Jason Rogers Williams
District Attorney
Patricia Amos
Assistant District Attorney
ORLEANS PARISH
619 South White St.
New Orleans, LA 70119

        COUNSEL FOR STATE OF LOUISIANA/APPELLEE


Kevin V. Boshea
ATTORNEY AT LAW
2955 Ridgelake Drive, Suite 207
Metairie, LA 70002

        COUNSEL FOR DEFENDANT/APPELLANT


                                           **AFFIRMED**
                                         **March 19, 2025**

NEK

PAB

RDJ

Defendant, Tracey Wright ("Defendant"), appeals his conviction of second degree murder. For the following reasons, we affirm his conviction.

## PROCEDURAL HISTORY

On May 18, 2023, Defendant was charged by a grand jury with the following: Count 1, second degree murder in violation of La. R.S. 14:30.1; Count 2, obstruction of justice in violation of La. R.S. 14:130.1; and Count 3, possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1. The charges arose from a confrontation that occurred on January 24, 2023, between Defendant and the victim, Ferdinand Alexander, wherein Defendant shot and ultimately killed Mr. Alexander. Defendant pled not guilty to the charges.

Defendant's case proceeded to a jury trial on February 27, 2024, and, at the conclusion, the jury unanimously found him guilty on all counts. After denying his motion to set aside the verdict and motion for new trial, the trial judge sentenced Defendant to life imprisonment on March 22, 2024. This appeal followed.

## ERRORS PATENT

Article 920 of the Louisiana Code of Criminal Procedure requires appellate courts to review the record of all appeals for any errors patent. *See State v.*

*Robinson*, 2021-0254, p. 20 (La. App. 4 Cir. 2/18/22), 336 So. 3d 567, 579. An error patent is "[a]n error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La. C.Cr.P. art. 920(2). Our review of the record does not reveal any errors patent.

## ASSIGNMENTS OF ERROR

Defendant assigns the following errors on appeal—(1) the verdict of second degree murder is contrary to the law and evidence; (2) the district court erred by denying the motion for new trial; (3) the district court erred by denying the motion to set aside the verdict; (4) "[t]he verdict is contrary to the law and evidence (Manslaughter);" and (5) the district court erred by denying the motion for mistrial based on the improper introduction of other crimes evidence. In regards to assignments of error nos. 1-4, Defendant argues that the evidence was insufficient to support his conviction for second degree murder; Mr. Alexander's death was caused by a delay in medical treatment; he was justified in shooting Mr. Alexander as an act of self-defense; and, at worst, the evidence supports a conviction for manslaughter. For ease of reference, and because they each involve the sufficiency of the evidence presented at trial, we address Defendant's assignments of error nos. 1-4 collectively.[1]

## DISCUSSION

### *Assignment of Errors Nos. 1-4: Whether the verdict of second degree murder is contrary to the law and evidence*

We turn to Defendant's first argument that the evidence was insufficient to convict him of second degree murder. When reviewing a challenge to the

---

[1] Defendant does not raise any errors as to his convictions for obstruction of justice or being a convicted felon in possession of a firearm. Therefore, he has waived any argument as to those charges, and we will not address those convictions.

2

sufficiency of trial evidence, the appellate court must look at all of the evidence in the record in a light most favorable to the prosecution and determine whether a rational trier of fact could have found all elements of the crime proven beyond a reasonable doubt. *State v. Pigford*, 2005-0477, pp. 5-6 (La. 2/22/06), 922 So. 2d 517, 520-21 (citations omitted); *see also State v. Pernell*, 2013-0180, p. 7 (La. App. 4 Cir. 10/2/13), 127 So. 3d 18, 25 (citation omitted). In performing this review, the appellate court cannot assess the credibility of witnesses or reweigh the evidence. *State v. Bradley*, 2018-0734, p. 4 (La. App. 4 Cir. 5/15/19), 272 So. 3d 94, 97 (citation omitted). It also cannot substitute its own interpretation of the evidence for that of the fact-finder, and it may only intervene to the extent necessary to guarantee due process. *Pigford*, 2005-0477, p. 6, 922 So. 2d at 521 (citations omitted).

Defendant was convicted of second degree murder in violation of La. R.S. 14:30.1. To sustain a conviction of second degree murder, the State must prove (1) the defendant killed the victim and (2) the defendant had the specific intent to either kill or inflict great bodily harm. *See* La. R.S. 14:30.1(A)(1). Specific intent is the "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or his failure to act." (1). "Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant." *State v. Scott*, 2023-0022, p. 9 (La. App. 4 Cir. 8/30/23), 372 So. 3d 42, 51 (quoting *State v. Bishop*, 2001-2548, p. 4 (La. 1/14/03), 835 So. 2d 434, 437).

The parties did not dispute at trial or on appeal that Defendant shot the victim, so the first element of the crime is not at issue here. Turning to the second element, the jury heard from Detective Joseph Jefferson with the Homicide

3

Division of the New Orleans Police Department. Det. Jefferson testified that during his investigation of this crime he interviewed the Defendant. A video of the interview was played for the jury, who heard the Defendant state he was surprised when Mr. Alexander came to his house and that he feared for his life. Defendant confirmed that he had given Mr. Alexander $200 to repair his car in December, and he assumed that Mr. Alexander had come to return his money. Defendant alleged that he told Mr. Alexander to leave, but Mr. Alexander charged at him instead. Defendant denied pulling out his gun prior to Mr. Alexander allegedly charging at him. He also denied contacting Mr. Alexander or his family on the day of the crime.

The jury also heard from Mr. Alexander's mother, Audrey Ezidore. She testified that the Defendant had come by her house on the day of the murder looking for her son. This was corroborated by video footage from Ms. Ezidore's doorbell camera, which she provided to Det. Jefferson. The video footage was played to the jury. The date of the video is the same as the date of the murder. Ms. Ezidore further testified that she told the Defendant her son was not home but she would tell her son to go to the Defendant's house when he returned.

In furtherance of his investigation, Det. Jefferson testified to the jury that he recovered both Mr. Alexander's and Defendant's phones and had forensic analyses performed on them. Although he attested he did not find any messages or calls between the two men on Defendant's phone, he did find messages between the two on Mr. Alexander's phone.[2] The forensic analysis of Mr. Alexander's phone was shown to the jury, and it contained multiple messages sent approximately a month

---

[2] Det. Jefferson noted that he was not able to access the contents of Defendant's phone until after Defendant had been apprehended.

before the murder between the two regarding the Defendant's car and money. Specifically, the report showed that on December 18, 2022, Defendant texted Mr. Alexander, "I want my money or the [car] part it's simple bro I don't do this it's going get [sic] violence [sic] bro."

Finally, the video footage from Defendant's own doorbell camera was shown to the jury at trial. The video depicts the Defendant appearing agitated and muttering to himself about money as he was entering his home.[3] Sometime later, Mr. Alexander is seen knocking on Defendant's door and retreating down the porch steps. Defendant opens his door, and a heated exchange occurs. Throughout the majority of the encounter, Mr. Alexander remained at the bottom of the porch steps, only ascending one step above but never any closer before being shot by Defendant.

The above evidence demonstrates that the jury reasonably found that Defendant had the specific intent to kill, or at the very least harm, Mr. Alexander. The text messages revealed that Defendant was upset at Mr. Alexander and even threatened to use violence against him. Although Defendant told Det. Jefferson he was caught off guard by Mr. Alexander coming to his home, Ms. Ezidore's testimony and the footage from her doorbell camera confirmed that he went searching for Mr. Alexander the day of the murder. Ms. Ezidore had told Defendant she would send her son to him, so Defendant knew that Mr. Alexander might come to his house. Looking at all this evidence in a light most favorable to the State, we find the evidence sufficient for the jury to find Defendant had the

---

[3] Specifically, Defendant said, "You took my money, bro. You took my $200, bro."

specific intent to kill or harm Mr. Alexander. Thus, in total, the jury had sufficient evidence to convict Defendant of second degree murder.

Despite all the evidence presented, Defendant asserts in his appellate brief that he is not responsible for Mr. Alexander's death. Rather, Defendant contends that the approximate one-hour delay in Mr. Alexander receiving medical treatment actually caused his death. This argument is without merit. In a murder case, the defendant's actions do not need to be the sole cause of the victim's death. *State v. Matthews*, 450 So. 2d 644, 646 (La. 1984) (citation omitted). Rather, the fact-finder must find that the defendant's actions hastened the victim's death or were a substantial factor in bringing about that death. *See id*.

Dr. Cynthia Gardner testified at trial that she performed an autopsy on Mr. Alexander and issued a report of her findings. While she acknowledged that the delay in medical treatment possibly contributed to his death, she confirmed that if the Defendant had not shot Mr. Alexander, then Mr. Alexander would not have died.[4] "The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction." *State v. Wells*, 2010-1338, p. 5 (La. App. 4 Cir. 3/30/11), 64 So. 3d 303, 306 (citation omitted). In light of the foregoing, we find the record contained sufficient evidence for the jury to find that Defendant's actions caused Mr. Alexander's death.[5]

At trial and in his appellate brief, Defendant maintained that he shot Mr. Alexander in self-defense because he believed that Mr. Alexander was going to

---

[4] She also confirmed that the narcotics found in Mr. Alexander's system did not cause his death.

[5] Even without Dr. Gardner's testimony, the jury could have reasonably found that Defendant caused Mr. Alexander's death. Common sense dictates that if Defendant had not shot Mr. Alexander then Mr. Alexander would not have required medical attention and, thus, would not have died.

harm him. When a defendant claims self-defense at trial, the State bears the burden of proving beyond a reasonable doubt that the defendant did not commit the homicide in self-defense. *State v. Labee*, 2022-0995, p. 6 (La. App. 1 Cir. 2/24/23), 361 So. 3d 1072, 1076-77 (citation omitted). Therefore, on appeal, we are bound to look at the evidence in a light most favorable to the State and determine whether the jury could have found beyond a reasonable doubt that the defendant *did not* act in self-defense. *Id.* at pp. 6-7, 361 So. 3d at 1077 (emphasis added) (citations omitted).

A homicide is considered to be justified when it is committed "in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La. R.S. 14:20(A)(1). Implicit in this definition are two elements—(1) a defendant's *reasonable* belief that he is in imminent danger of losing his life or receiving great bodily harm and (2) defendant's *reasonable* belief that the killing is necessary to save himself. *State v. Miller*, 2014-0406, p. 19 (La. App. 4 Cir. 2/25/15), 160 So. 3d 1069, 1082 (emphasis added). However, the justification defense may not apply to a defendant who acts as the aggressor and provokes the situation. *State v. Bethley*, 2022-0849, p. 6 (La. App. 4 Cir. 6/21/23), 368 So. 3d 1148, 1154 (citation omitted).

As previously noted, Ms. Ezidore's testimony and the footage from her doorbell camera show that Defendant sought out Mr. Alexander on the day of the murder. Thus, Defendant's statement to Det. Jefferson that he was surprised by Mr. Alexander coming to his house is false. Defendant also told Det. Jefferson that Mr. Alexander charged at him, but this statement is similarly contradicted by the video footage collected from Defendant's doorbell camera. Mr. Alexander never charged

at Defendant during the incident. Dr. Gardner testified to the jury that when the gun went off it was not pressed against Mr. Alexander. She classified the injury as "indeterminate," meaning the gun was shot at a distance greater than two feet away from the victim. This likewise contradicts Defendant's statement that Mr. Alexander charged at him. Lastly, Defendant pointed out at trial that a knife was recovered from Mr. Alexander's possessions on the day of the murder. Defendant used this fact to bolster his argument that he feared for his life and was justified in killing Mr. Alexander. However, the video footage from Defendant's doorbell camera does not show Mr. Alexander pulling out the knife or using it in any way. Accordingly, in looking at everything in a light most favorable to the State, the evidence was sufficient for the jury to find that Defendant did not have a reasonable belief that he was in danger or that he acted in self-defense.

Finally, Defendant asserts that, at worst, the jury could have only convicted him of manslaughter. Manslaughter is a homicide "committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." La. R.S. 14:31(A)(1). The statute does not apply to situations wherein the offender's blood had actually cooled or wherein an average person's blood would have cooled. *Id.*

When a defendant claims that he is entitled to a verdict of manslaughter, as opposed to second degree murder, that defendant bears the burden of establishing through a preponderance of the evidence that he was sufficiently provoked to act in a sudden passion or heat of blood. *Miller*, 2014-0406, p. 21, 160 So. 3d at 1083 (citation omitted). Similar to our analysis thus far, we look at the evidence in the record in a light most favorable to the State to determine whether the jury could have reasonably found "that the mitigatory factors were not established by a

8

preponderance of the evidence." *State v. Davis*, 2022-281, p. 10 (La. App 5 Cir. 3/8/23), 360 So. 3d 82, 90 (citation omitted).

As already discussed ad nauseam, we find the record contains sufficient evidence for the jury to have convicted Defendant of second degree murder. The evidence is also sufficient to find that Defendant did not act in self-defense when he shot Mr. Alexander. Again, Defendant had been sending messages to Mr. Alexander and threatened violence a month prior to the homicide. Defendant also actively sought out Mr. Alexander prior to the confrontation. When Mr. Alexander met Defendant at his house, Defendant shot him. Nothing in the record indicates that Defendant acted in a sudden heat of passion. To the contrary, the evidence seems to suggest that Defendant actively desired this outcome. Therefore, Defendant failed to prove that he was sufficiently provoked to act in a sudden heat of passion to lessen his conviction to manslaughter.

Considering all of the above, we find the evidence presented at trial to be sufficient to convict the Defendant of second degree murder, and we find that Defendant was not entitled to the lesser verdict of manslaughter.

***Assignment of Error No. 5: Whether the district court erred in denying the motion for mistrial based on the introduction of other crimes evidence***

Defendant asserts in his last assignment of error that the district court erred in denying his motion for mistrial. Defendant based his mistrial argument around Ms. Ezidore's testimony that Defendant told her "that his cousin could have killed [her] son that Sunday while he was working on the van." Defendant argues in his brief that this statement amounted to the introduction of other crimes evidence, specifically conspiracy to commit murder in violation of La. R.S. 14:26.

When a witness makes an improper remark, the district court has the option to either admonish the jury to disregard the statement or declare a mistrial. *State v. Ducre*, 2001-2778, p. 1 (La. 9/13/02), 827 So. 2d 1120, 1120. However, "[m]istrial is a drastic remedy which should be declared only upon a clear showing of prejudice by the defendant; a mere possibility of prejudice is not sufficient." *Id.* (citations omitted). Additionally, the trial judge is vested with broad discretion in determining whether a witness' statement was so prejudicial so as to deprive a defendant of a fair trial. *Id.* (citations omitted). The appellate court should not reverse a conviction based on an improper witness statement unless that statement affected the defendant's substantial rights. *State v. Caminita*, 2016-0121, p. 7 (La. App. 1 Cir. 9/16/16), 203 So. 3d 1100, 1106 (citing La. C.Cr.P. art. 921).

Immediately after Ms. Ezidore made her statement, defense counsel requested to conference with the presiding trial judge. He then proceeded to move for a mistrial outside the presence of the jury. In his argument for the mistrial, defense counsel claimed that the statement "could be deemed prejudicial towards [Defendant]." In response, counsel for the State noted that the statement was about the Defendant's cousin, not about the Defendant himself. The trial judge denied the motion for mistrial, finding the statement to be immaterial to the ultimate issue at trial, which was whether the Defendant shot the victim in self-defense. When the jury returned to the courtroom, the judge admonished the jury to disregard Ms. Ezidore's statement.

Similar to his argument at trial, Defendant fails to show in his appellate brief how this statement prejudiced him. His argument is premised on the fact that the improper statement was made, not on the relationship between the statement and his conviction. In sum, Defendant has failed to meet his burden of making a clear

showing of prejudice. *Ducre*, 2001-2778, p. 1, 827 So. 2d at 1120. As noted earlier, the total evidence introduced at the trial of this matter was sufficient for the jury to find that Defendant had committed second degree murder. In light of the total evidence introduced at trial in conjunction with the trial judge's admonishment to the jury to disregard the statement, we do not find that this one statement deprived Defendant of a fair trial, and the district court did not err in denying the motion for mistrial.

## DECREE

For the foregoing reasons, we affirm Defendant's conviction.

**AFFIRMED**