993 So.2d 307 (2008)
STATE of Louisiana
v.
Jerry BELLOW.
No. 08-KA-259.
Court of Appeal of Louisiana, Fifth Circuit.
July 29, 2008.
*308 Harry J. Morel, Jr., District Attorney, Juan Byrd, Assistant District Attorney, Hahnville, Louisiana, for Plaintiff/Appellee.
Bruce G. Whittaker, Attorney at Law, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., CLARENCE E. McMANUS, and WALTER J. ROTHSCHILD.
*309 CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
The St. Charles Parish District Attorney filed a bill of information charging defendant, Jerry Bellow, with five felony offenses. Defendant was charged in count one with vehicular homicide, a violation of LSA-R.S. 14:32.1. Defendant was charged in counts two and three with first degree negligent injuring, a violation of LSA-R.S. 14:39.2. In count four, defendant was charged with operating a vehicle while intoxicated (DWI), fifth offense, under LSA-R.S. 14:98. Count five charged hit-and-run driving after having been convicted of DWI at least twice in the preceding ten years. LSA-R.S. 14:100 C. Defendant was arraigned on October 28, 2004, and pled not guilty to all charges.
On February 24, 2005, the State changed the charge in count four from fifth offense DWI to fourth offense DWI. As to count five, the State struck two of the four alleged predicate convictions. The prosecutor made the changes by hand on the original bill of information.
The State filed an amended five-count bill of information on March 15, 2005. On that day defendant was arraigned on the amended bill, and pled not guilty. The State filed another amended bill of information on July 26, 2005. There is no indication in the record as to whether defendant was arraigned on that bill. The State filed a third amended bill of information on August 11, 2005. Defendant was arraigned on that bill the same day, and pled not guilty to all charges.
On August 15, 2005, the State filed a fourth and final amended bill of information in order to correct a clerical error in count four. The final charges were: count one, vehicular homicide; counts two and three, vehicular negligent injuring; count four, DWI-fourth offense or greater; and count five, hit-and-run driving after having been convicted of DWI at least twice within the preceding 10 years. Defendant was arraigned on the amended bill that day, and entered a plea of not guilty to all charges.
Defendant was tried by a six-person jury on August 15 and 16, 2005. The jury found defendant guilty as charged on all counts.
Defendant filed a Motion for New Trial on December 13, 2005. The trial court heard arguments on the motion that day, and denied it. Defendant waived the statutory delay, and the trial court sentenced him that day to 30 years at hard labor on count one, at least five years of which would be served without benefit of parole, probation, or suspension of sentence. As to counts two and three, the court sentenced defendant to five years at hard labor on each count, to run concurrently with the sentences on count one, and a $2,000.00 fine on each count. On count four, the court imposed a sentence of 30 years at hard labor to run concurrently with the sentence on count one, plus a $5,000.00 fine. On count five, the court sentenced defendant to 10 years at hard labor, to run consecutively to the other sentences.
On January 17, 2006, defendant filed a Motion for Reconsideration of Sentence. The judge denied the motion on January 25, 2006. Defendant filed a Motion for Appeal on February 21, 2006. The trial court granted the motion on February 27, 2006.
Defendant filed an appeal in this Court. This Court dismissed the appeal as untimely, and remanded to the trial court to allow defendant to seek reinstatement of his appeal rights by filing an application for post-conviction relief. State v. Bellow, 06-431 (La.App. 5 Cir. 12/12/06), 949 So.2d *310 488. Defendant filed a writ application in the Louisiana Supreme Court, challenging this Court's ruling. The supreme court denied the writ. State v. Bellow, 07-0061 (La.9/21/07), 964 So.2d 330.
On November 28, 2007, defendant filed a pro se uniform application for post-conviction relief in the trial court, requesting leave to file an out-of-time appeal. On February 8, 2008, the trial court issued an "Order on Application for Post-Conviction Relief," in which it granted defendant an out-of-time appeal.

FACTS
On the afternoon of March 27, 2004, Sergeant Olga Fourroux, an off-duty deputy with the St. Charles Parish Sheriffs Office, was driving southbound on Louisiana Highway 61 (Airline Highway) between LaPlace and her home in Norco. She testified that she pulled her vehicle into the right lane of traffic and prepared to stop at a Shell service station for cigarettes. To her left Sergeant Fourroux saw a green pickup truck, later identified as belonging to defendant, Jerry Bellow. She testified that the truck was stopped at a stop sign on Spillway Road, an east/west road that runs perpendicular to and intersects with Airline Highway. The truck drew Fourroux's attention because its driver was "revving" the engine.
Sergeant Fourroux testified that the green truck entered the intersection traveling "kind of fast," and its tires were squealing. At that point a maroon car, driven by Juan Hernandez, passed Fourroux in the lane to her left. Hernandez apparently lost control of the car and crossed into the oncoming northbound lanes of traffic. While Fourroux did not see the impact, she heard vehicles crash. She then saw the green pickup truck speed past her in the southbound lanes of Airline Highway. The truck's driver appeared to be in a hurry to get away. Fourroux followed the truck in order to get its license plate number. She then returned to the scene of the accident.
Ronald Loper testified that he witnessed the collision. He was a passenger in a vehicle heading north in the right lane of Airline Highway. He said the pickup truck pulled out onto the highway, its tires squealing, and hit the "red" (i.e., Mr. Hernandez's) car. That caused the car to spin into the northbound lanes and collide with an oncoming sports utility vehicle. Mr. Loper testified that Mr. Hernandez swerved in an attempt to avoid the accident, but was unsuccessful.
Mr. Loper said the pickup truck's driver did not stop, although he would certainly have seen the accident. Mr. Hernandez's vehicle was hit on the front driver's side, and the wreckage caved in on him. Mr. Loper jumped out of his vehicle and tried to assist Hernandez, but he could not open the door on Hernandez's car. Mr. Loper testified that Hernandez died at the scene.
At the time of the collision, James Powe and his wife, Margaret Powe, were riding in their Chevrolet Tahoe sports utility vehicle. Mr. Powe, who was driving the vehicle, testified that he stopped at the Shell station to buy gasoline. He then pulled out of the station and headed northbound on Airline Highway in the center lane. He glanced at the lane to his right, and at the left turn lane to his left, and saw they were clear. At that point the Powes' vehicle collided with Mr. Hernandez's car. Mr. Powe testified that he heard "boom," and then he blacked out. Mrs. Powe testified that she turned to adjust her purse, which was sitting on the floor of the vehicle. She heard a "terrible sound," and then she too lost consciousness. The Powes both suffered severe injuries from the collision.
*311 Paul Bellow, defendant's seventeen-year-old nephew, testified that he attended a crawfish boil at the Spillway on March 27, 2004. Defendant was also there. When Paul arrived there at 3:30 p.m., the party was underway. Some of the guests were drinking alcohol, but Paul did not see defendant drinking.
The crawfish boil ended at about 5:30 p.m., and defendant gave Paul a ride in his pickup truck. Defendant stopped the truck at a stop sign on the Spillway Levee Road. He then proceeded across the northbound lanes of Airline Highway, and into the northbound left turn lane. From there defendant pulled into the southbound lanes of Airline Highway. The maroon car, heading southbound, passed in front of defendant's truck, and then it was involved in a collision. Paul testified that defendant did not stop to offer assistance at the accident scene. Instead, they went to the residence of defendant's girlfriend, Tessie Stuard.
State Trooper Robert Vittitoe testified he reported to the scene of the accident at 5:43 p.m. By that time the Powes had been transported to River Parish Hospital for treatment of their injuries. Hernandez was still inside of the maroon Ford LTD. Fire department personnel pried open the car's door, and the coroner arrived to remove the body. Trooper Vittitoe testified that Sergeant Fourroux gave Deputy Mark Candies of the St. Charles Parish Sheriffs Office the license plate number of the truck that allegedly caused the accident. Candies gave the number to Trooper Vittitoe. Vittitoe ran the number on the police computer system to determine the truck's owner.
State Trooper Jeffrey Argrave testified that he was dispatched to the home of defendant's sister, Joann Bellow, where the pickup truck was registered. Trooper Argrave said defendant arrived at Ms. Bellow's house at about 7:45 p.m. in a car driven by Ms. Stuard. Defendant appeared to the officer to be intoxicated. His breath smelled of alcohol, his eyes were bloodshot, and his speech was slurred. Defendant told Argrave his truck was parked at Ms. Stuard's house in Norco, and defendant went there with the officer to examine it.
Argrave testified that the truck was parked behind a trailer, and it was not visible from the street. It looked as though defendant was attempting to conceal it there. Argrave touched the truck's hood, and it felt warm. He asked defendant if he had been driving the truck, and defendant said he had not. Defendant said the truck's starter was not working, and he had towed it there earlier in the day. He claimed Ms. Stuard had driven him home from the crawfish boil.
Defendant agreed to accompany Argrave to the scene of the accident to meet with investigating officers. Lieutenant John Stelly of the Louisiana State Police testified that he was at the scene when defendant arrived. Stelly said defendant's eyes were bloodshot, his speech was slurred, and his breath smelled of alcohol. Defendant told the lieutenant and Trooper Vittitoe he had attended a crawfish boil at the Spillway earlier that day. His truck would not start, so he had had it towed to Ms. Stuard's house and returned to the crawfish boil with Ms. Stuard. At 5:25 p.m., Ms. Stuard drove him home from the gathering.
Sergeant Fourroux positively identified defendant as the driver of the pickup truck involved in the accident. Vittitoe arrested defendant and transported him to jail. When they arrived, Vittitoe asked defendant to submit to a field sobriety test. Defendant performed poorly on that test, so the officer advised him of his rights and administered a breathalyzer test with the *312 Intoxylizer 5000. Vittitoe testified that defendant's blood alcohol level at 9:00 p.m. on March 27, 2004 was .109 grams percent. The legal limit is .08 grams percent.
After completing defendant's breathalyzer test, Vittitoe again advised defendant of his rights, and conducted what he termed a "DWI interview" with him. When the officer asked defendant whether he had taken any medication, defendant replied, "`Budweiser.'" In response to further questioning, defendant said he started drinking at the crawfish boil at 1:00 that afternoon. He had four twelve-ounce beers, and stopped drinking between 2:30 and 3:00 p.m. Defendant admitted he was driving the truck that pulled out from the Spillway Road onto Airline Highway that afternoon. Defendant said he had not had anything to drink since the time of the crash. Defendant then completed a written statement, in which he said he left the Spillway with his girlfriend at 5:30 p.m. and went home. He also stated that he was accused of causing a wreck, but that he did not know what was going on.
Joann Bellow, who is defendant's sister and Paul Bellow's mother, testified for the defense. She stated that the crawfish boil on March 27, 2004 was a party to celebrate her birthday. It began at about 10:30 or 11:00 a.m. She saw defendant drink only one beer at the event. The party ended at about 5:30 p.m., and she allowed her son to leave with defendant. Defendant did not appear to her to be under the influence of alcohol. Defendant did not leave with Tessie Stuard, as he reported to officers. Moreover, defendant's truck was not towed from the party; it was "pull-start[ed]."
Cassandra Joubert, a friend of defendant's, testified that she went to the crawfish boil on March 27, 2004. During the party, she saw defendant with only two "Bud Lights," both of which were knocked over and spilled. He did not appear to her to be drunk. She was not, however, around defendant the whole time. Ms. Joubert said she spoke with defendant just before he left the gathering. At that time he was working on his truck. The vehicle's starter was not working, and Ms. Joubert's husband pull-started it.
Ms. Joubert testified that she left the crawfish boil when defendant did, and she witnessed the accident on Airline Highway. After the gathering, Ms. Joubert went to Tessie Stuard's residence, where she had drinks with defendant and others. She saw defendant drink two or three shots of Seagram's 7 or "VO." Defendant also drank "a couple of beers.
Cindy Blount, another defense witness, testified that she was at the crawfish boil until about 5:00 or 5:30 p.m. She saw defendant about 90 minutes before she left the party. She did not see defendant drink any alcoholic beverage there. She last talked to him 20 to 30 minutes before leaving the party. At that time defendant was not staggering or swaying, and his speech was not slurred. In Ms. Blount's opinion, defendant was not under the influence of alcohol.
Ms. Blount left the party at about the same time defendant did. She testified that defendant was driving the pickup truck. Ms. Blount witnessed the accident.
Tessie Stuard, a State rebuttal witness, testified she was dating defendant at the time of the incident. She arrived at the crawfish boil between 10:30 and 11:00 a.m. She testified that she saw defendant drink one or two 12-ounce cans of beer during the course of the party, but that she was not with him the entire time. Ms. Staurd left the party with defendant twice during the day, and returned with him both times. She did not leave in the same vehicle as *313 defendant at the end of the party, although she did leave the gathering when defendant did.
Ms. Stuard testified that defendant met her at her house, where defendant drank a beer and a shot or two of whiskey. They stayed there for forty-five minutes to one hour and fifteen minutes. They then left in Ms. Stuard's car (with Ms. Stuard driving) and headed for Joann Bellow's house. They had "a couple" of beers along the way.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that the evidence at trial was not sufficient to support his convictions for vehicular homicide and first degree vehicular negligent injuring. Defendant argues he was not the cause of the collision that killed Juan Hernandez and seriously injured the Powes. He suggests that Hernandez simply lost control of his vehicle. The State responds that the eyewitness testimony offered by the State was sufficient to support defendant's convictions.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier-of-fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Collins, 04-1443 (La.App. 5 Cir. 7/26/05), 910 So.2d 454, 457. When circumstantial evidence forms the basis of a conviction, LSA-R.S. 15:438 requires that the elements of the offense be proven so that every reasonable hypothesis of innocence is excluded. State v. Schnyder, 06-29, p. 5 (La.App. 5 Cir. 6/28/06), 937 So.2d 396, 400. "... [T]he pertinent question on review [is] not whether the appellate court found that defendant's hypothesis of innocence offered a reasonable explanation for the evidence at trial but whether jurors acted reasonably in rejecting it as a basis for acquittal." State v. Pigford, 05-0477, p. 5 (La.2/22/06), 922 So.2d 517, 520 (per curiam). All of the evidence, both direct and circumstantial, must be sufficient to satisfy a rational trier-of-fact that the defendant is guilty beyond a reasonable doubt. State v. Schnyder, supra.
In count one, defendant was charged with vehicular homicide of Juan Hernandez. LSA-R.S. 14:32.1 provides, in pertinent part:
A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance, whether or not the offender had the intent to cause death or great bodily harm, whenever any of the following conditions exists:
(1) The operator is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.
(2) The operator's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.
Under the vehicular homicide statute, "the state ... must prove that an offender's unlawful blood alcohol concentration combined with his operation of a vehicle to cause the death of a human being." State v. Taylor, 463 So.2d 1274, 1275 (La. 1985). It is not sufficient for the State to simply prove that the defendant's consumption of alcohol coincides with the accident. Id. The State must show a causal connection between the impaired driving and the victim's death. State v. Gourdine, *314 41,469, p. 8 (La.App. 2 Cir. 12/13/06), 946 So.2d 277, 284. A causal relation between the defendant's conduct and the harm for which the prosecutor seeks to impose criminal sanctions is an essential element of every crime. State v. Kalathakis, 563 So.2d 228, 231 (La.1990). Causation is a question of fact that must be considered in light of the totality of the circumstances surrounding the ultimate harm and its relation to the actor's conduct. Id., citing M. Bassiouni, Substantive Criminal Law, §§ 5, 5.2 (1978).
The Louisiana Supreme Court has held it is not essential that the State prove the defendant's action was the sole cause of the victim's death. In a case involving charges of negligent homicide arising from a "drag racing" accident, the supreme court found the proper test is whether the defendant's conduct was a substantial factor in bringing about the ensuing death. State v. Martin, 539 So.2d 1235, 1239 (La.1989), citing State v. Matthews, 450 So.2d 644, 646 (La.1984).
In the instant case, the evidence established that defendant had an unlawful blood alcohol level at the time of the accident. Trooper Vittitoe testified that the Intoxylizer 5000 test he administered at 9:00 p.m., about three hours after the accident, registered .109 grams percent. That is well over the legal limit of .08 grams percent.
Dr. William George, an expert in toxicology and pharmacology, testified that alcohol is unique among drugs in that it has a fairly constant rate of elimination from the body, which is 15 to 20 milligrams percent per hour. The doctor further testified that 30 milligrams percentage (.03) is the highest blood alcohol level one can attain without experiencing some effects. A person who has a .109 blood alcohol level is impaired.
Dr. George estimated that if defendant stopped drinking alcohol at 3:00 p.m. on the day of the accident, and he had a blood alcohol level of .109 when he was tested at 9:00 p.m., his blood alcohol level at the time of the accident (5:23 p.m.) was .167. The doctor calculated that if defendant consumed two beers between the time of the accident and 7:46 p.m., his blood alcohol level at the time of the accident was, at most, .133.
Defendant acknowledges that he consumed some alcohol prior to the accident, and that he left the scene following the accident. But he argues the State failed to prove his drinking and driving were the cause of the collision. He asserts that Hernandez was speeding, and that is what caused him to lose control of his vehicle and hit the Powes' SUV. Defendant does not cite any evidence in the record for his assertion that Mr. Hernandez was speeding. He simply maintains it is common knowledge that motorists speed on that stretch of road.
We find there is sufficient evidence to support a finding that the State proved the element of causation. First, the parties stipulated at trial that Juan Hernandez died as a result of injuries he sustained in the collision, and that toxicology tests run on Mr. Hernandez after his death showed no alcohol or drugs were in his system.
The testimony showed defendant was traveling at a high rate of speed when he entered the intersection. Sergeant Fourroux testified defendant's truck was traveling "kind of fast," and its tires were squealing when it entered the intersection. Ronald Loper also testified that the truck's tires were squealing. Both Trooper Vittitoe and Lieutenant Stelly testified that defendant failed to follow proper lane usage, since the left turn lane on northbound Airline Highway is intended only for use *315 by northbound vehicles turning left onto the Spillway Road. It was improper for defendant to use that lane to make a left turn from the Spillway Levee Road onto the southbound lanes. In doing so, defendant violated a traffic ordinance. Lieutenant Stelly testified that between defendant and Juan Hernandez, who was traveling southbound on Airline Highway, Hernandez would have had the right of way.
While the witnesses' testimony generally agreed on the path defendant's truck took when crossing the intersection, it differed on whether defendant's truck actually struck Hernandez's car. Mr. Loper, an eyewitness to the accident, testified that he saw defendant's truck "[s]pinning out to jump out in front of the vehicle." Loper said the driver of the "red" vehicle then swerved in an attempt to avoid an accident. Loper said defendant's truck hit Hernandez's car. According to Loper, that contact caused Hernandez's car to spin and veer into the lanes of oncoming traffic and hit the Powes' SUV. On cross-examination, Loper acknowledged that he told the investigating state trooper he did not know whether the pickup truck hit the red car. But Loper explained that he was "shook up and so nervous and so upset" when he spoke to the officer, because he had failed to save Mr. Hernandez. Loper further stated, "For the vehicle to do that, there had to be [contact]. But, to my knowledge, actually  for a vehicle to do what it done you've got to make contact." When defense counsel specifically asked Loper whether he saw any contact, Loper responded, "I want to say, `yes.'"
Defendant's nephew, Paul Bellow, who was riding in the truck with defendant, testified that Hernandez's maroon car passed in front of defendant's truck before colliding with the SUV.
Trooper Vittitoe testified that he constructed his diagram of the accident from physical evidence and the statements of Ronald Loper and defendant. Vittitoe said he had no reason to believe there was contact between defendant's truck and Hernandez's, because there was no body damage to the truck that corresponded to the damage on the car. Vittitoe further stated that he did not depict a collision between defendant's truck and Hernandez's car in his police diagram of the incident. Rather, the diagram shows that defendant entered the intersection, and that Hernandez swerved to the right when he reached the spot where defendant's truck was, then swerved to the left, crossed the lane, and collided with the Powes' SUV. But Vittitoe also testified he did not examine defendant's truck following the accident; Trooper Arbry did.
Trooper Arbry did not testify as to whether he detected damage on the truck. Arbry did identify several police photographs of the truck taken after he located the vehicle. He testified that the photographs accurately depicted what the truck looked like when he found it. In the photographs, the truck appears well used. But there is no body damage readily apparent in the pictures that would suggest the truck came into contact with Mr. Hernandez's car.
Defendant's friend Cassandra Joubert, a defense witness, testified she left the crawfish boil at the same time defendant did, and she witnessed the accident. Ms. Joubert said the driver of the maroon car hit his brakes, and the front end of his car started moving. The maroon car started sliding when it passed in front of defendant's truck. Defendant's truck swerved around the car, but did not hit it. Ms. Joubert speculated that if the maroon car had hit the truck at the speed at which it was traveling, it would have knocked off the truck's front end. Joubert testified that as the maroon car passed defendant's *316 truck, its driver appeared panic-stricken. The driver slammed on his brakes, and the maroon car fishtailed.
According to another defense witness, Ms. Blount, the car passed in front of defendant's truck, but did not hit it. The car then veered into the northbound lane and was hit by the oncoming vehicle. Ms. Blount testified that she assumed the maroon car's driver braked abruptly out of the mistaken belief that defendant was going to pull out into his lane.
It was not necessary for the State to show defendant's truck actually hit Hernandez's car in order to prove causation. The jury could have reasonably found, given the totality of the circumstances, that defendant's truck either hit Mr. Hernandez's car or that it at least prompted Hernandez to swerve to avoid hitting it; thereby causing Hernandez to lose control of his vehicle and veer into the oncoming lanes of traffic. While defendant's actions in attempting an improper turn at the intersection were not necessarily the sole cause of the collision that killed Hernandez, they appear to have been a substantial factor in the collision. See State v. Martin, supra, in which the defendant was found to be guilty of negligent homicide where the person with whom he was "drag racing" crashed into the victims' vehicles and killed them.
Defendant argues there is absolutely no evidence to show that Hernandez took evasive action to avoid hitting defendant's truck. But that is not the case. The jury could have reasonably inferred, based on Ms. Joubert's testimony, that Hernandez applied his brakes and swerved to the right to avoid a collision with defendant, thereby causing his car to careen out of control. Such an inference could also have been reasonably drawn from Mr. Loper's testimony.
The State argues that defendant's flight from the scene of the accident and his attempt to conceal his truck are further evidence of his guilt. Evidence of flight, concealment, and attempt to avoid apprehension is relevant and admissible to prove consciousness of guilt from which the trier-of-fact may infer guilt. State v. Wilkerson, 403 So.2d 652, 659 (La.1981). Defendant left the scene of the accident, hid his truck from view, and told police he had not driven it. Those facts can be viewed as evidence of defendant's guilt.
In counts two and three, the State charged defendant with the first degree vehicular negligent injuring of Margaret Powe and James Powe. LSA-R.S. 14:39.2 provides, in pertinent part:
A. First degree vehicular negligent injuring is the inflicting of serious bodily injury upon the person of a human being when caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance whenever any of the following conditions exists:
(1) The offender is under the influence of alcoholic beverages.
(2) The offender's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.
. . . .
C. For purposes of this Section, "serious bodily injury" means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member or organ or a mental faculty, or a substantial risk of death.
As discussed above, the State's evidence showed defendant's blood alcohol *317 level exceeded .08 percent at the time of the incident. The State also proved the Powes sustained serious bodily injury. Mr. Powe testified that as a result of the collision, he suffered a cracked sternum, and was unable to work for two months. Mrs. Powe said that she too suffered various bodily injuries due to the accident, and she was hospitalized for 68 days.
Defendant argues that his driving after consuming alcohol on the day of the accident was neither the direct nor the proximate cause of Mr. and Mrs. Powes' injuries as contemplated under subpart A of the statute. But based on the evidence presented at trial, we find the evidence was sufficient under the Jackson analysis to support defendant's conviction for first degree vehicular negligent injuring in counts two and three.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant complains he was prejudiced by the trial court's denial of his motion to sever the fourth offense DWI and hit-and-run driving charges for trial. He argues the jury likely failed to separate the predicate DWI convictions from the charges in the instant case. The State responds that defendant failed to meet his burden of proving he was prejudiced by the joinder of the offenses.
Defendant filed a Motion for Severance of Offenses on November 16, 2004. On February 24, 2005, the judge denied the severance motion in open court, giving oral reasons. The judge recognized that defendant would incur some prejudice from the joinder of the five offenses for trial, but he did not find defendant was so unduly prejudiced that he would be deprived of due process of law. The judge further noted that all of the offenses arose out of the same incident, and were triable by the same mode of trial.
LSA-C.Cr.P. art. 493 permits the joinder of offenses that "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan[,]" provided the offenses are triable by the same mode of trial. The three charges against defendant in this case arose from the same transaction, and were triable by the same mode of trial. They were, therefore, properly charged in the same bill of information.
A defendant properly charged in the same indictment with two or more offenses in accordance with LSA-C.Cr.P. art. 493 may nevertheless move for a severance of the offenses under LSA-C.Cr.P. art. 495.1, which states: "If it appears that a defendant... is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires."
In determining whether prejudice may result from the joinder, the court should consider whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. State v. Washington, 386 So.2d 1368, 1371 (La. 1980); State v. Williams, 05-317, pp. 19-20 (La.App. 5 Cir. 11/29/05), 918 So.2d 466, 477-78, writ denied, 06-0638 (La. 10/6/06), 938 So.2d 64.
The defendant has a heavy burden of proof when he alleges prejudicial *318 joinder. Id. A motion to sever under LSA-C.Cr.P. art. 495.1 is addressed to the sound discretion of the trial court and the ruling should not be disturbed on appeal absent a showing of an abuse of discretion. State v. Demise, 98-0541, p. 7 (La.4/3/01), 802 So.2d 1224, 1232, cert, denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001); State v. Simmons, 03-1458, p. 5 (La.App. 5 Cir. 5/26/04), 875 So.2d 1018, 1021, writ denied, 04-1702 (La.11/19/04), 888 So.2d 194.
Defendant failed to show the joinder deprived him of his due process rights. The charges were not such that the jury could have been easily confused or unable to segregate the various counts. Although there were several witnesses at trial, the facts of the case were not complicated. The trial court instructed the jury as to the law on each offense separately, identifying each count by its number.
It does not appear that the jury would have used the predicate DWI offenses enumerated in count four to infer defendant had a criminal disposition. The trial court instructed the jury that the prior DWI convictions were alleged in the bill of information "solely to enhance the penalty" in the event that the jury found the defendant had committed a DWI offense charged in the instant bill of information. Finally, defendant has failed to show that the joinder of the offenses made the jury hostile towards him.
Based on the foregoing, we find that the trial court did not abuse its discretion in denying defendant's motion for severance.

ASSIGNMENT OF ERROR NUMBER THREE
The Defendant requests an error patent review. This Court routinely reviews the record for errors patent regardless of whether defendant makes such a request. LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We note three errors for review.
First, defendant's 30-year sentence on count one is illegally excessive. The trial court referred to the current version of LSA-R.S. 14:32.1, which sets the maximum sentence for vehicular homicide at 30 years. But the version of the statute in effect at the time of the offense set the maximum sentence at 20 years. The applicable sentencing scheme is the one in effect at the time the offense is committed. State v. Sugasti, 01-3407, p. 2 (La.6/21/02), 820 So.2d 518, 521. Therefore, we vacate defendant's sentence on count one and remand for re-sentencing in conformity with the applicable statutory provisions.
Second, defendant's sentence on count one is also indeterminate. The trial court ordered that "at least 5 years" of the sentence be served without benefit of parole, probation, or suspension of sentence. The term "at least" renders the sentence indeterminate. LSA-C.Cr.P. art. 879 provides that "[i]f a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence." Ordinarily, an indeterminate sentencing provision would necessitate remand to the trial court for clarification. See State v. Hines, 07-312, p. 7 (La.App. 5 Cir. 10/30/07), 970 So.2d 1134, 1138. But in this case, the sentence will have to be vacated as illegally excessive, as discussed above, rendering the issue moot. However, we address this error in order to provide guidance to the trial court for re-sentencing purposes.
Finally, the trial court did not give defendant a complete advisal of the prescriptive period for applying for post-conviction relief under LSA-C.Cr.P. art. 930.8. Subpart A of the article provides *319 that a defendant has two years "after the judgment of conviction and sentence has become final" in which to file an application for post-conviction relief. The trial judge informed defendant he had "two years from the date of finality of [his] conviction which is after your appeal is heard and finalized by the higher courts to file for what's called post-conviction relief[.]" Therefore, we order the trial court to properly advise defendant of the provision of Article 930.8 at the time of his re-sentencing. See State v. Young, 05-702, p. 13 (La.App. 5 Cir. 2/14/06), 938 So.2d 90, 99-100.
Accordingly, defendant's convictions are affirmed and we vacate defendant's sentences and remand to the trial court for re-sentencing pursuant to the above error patent discussion.
CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED.